## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

THOMAS JONES; JOSEPH CHARLES &ast;
LOHFINK; SUE BEAVERS;
RODOLFOA REL; and HAZEL REED &ast;
THOMAS, on behalf of themselves and
Others similarly situated, &ast;

     Plaintiffs, &ast;

v. &ast;         Civil Action No.:
                         1:14-CV-00447-KS-RHW
SINGING RIVER HEALTH SERVICES &ast;
FOUNDATION; SINGING RIVER
HEALTH SYSTEM FOUNDATION; &ast;
SINGING RIVER HOSPITAL SYSTEM
FOUNDATION, INC.; SINGING RIVER &ast;
HOSPITAL SYSTEM EMPLOYEE
BENEFIT FUND, INC.; SINGING &ast;
RIVER HOSPITAL SYSTEM;
TRANSAMERICA RETIREMENT &ast;
SOLUTIONS CORPORATION;
KPMG, LLP; MICHAEL J. &ast;
HEIDELBERG; MICHAEL D.
TOLLESON; TOMMY LEONARD; &ast;
LAWRENCE H. COSPER; MORRIS G.
STRICKLAND; IRA POLK; STEPHEN &ast;
NUNENMACHER; HUGO QUINTANA;
CHRIS ANDERSON; STEPHANIE &ast;
BARNES TAYLOR; MICHAEL
CREWS; and &ast;
SINGING RIVER HEALTH SYSTEM,

     Defendants. &ast;

---

## AMENDED CLASS ACTION COMPLAINT

---

## JURY TRIAL REQUESTED

COME NOW the Plaintiffs, on behalf of themselves and all others similarly situated, and file this Amended Complaint and allege against the Defendants as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 28 U.S.C. § 1343(a)(3) and 29 U.S.C. § 1132(e)(1). This Court further has jurisdiction pursuant to 28 U.S.C. § 1332 as all Plaintiffs are diverse in citizenship from all Defendants.

2.    This Court has personal jurisdiction over Defendants Singing River Health Services Foundation, Singing River Health System Foundation, Singing River Hospital System Foundation, Inc., Singing River Hospital System Employee Benefit Fund, Inc., Singing River Hospital System, Singing River Health System, Transamerica Retirement Solutions Corporation, and KPMG, LLP because these defendants are headquartered and/or transact business in, and have significant contacts with, this District.

3.    This Court has personal jurisdiction over Michael J. Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, Hugo Quintana, because they are members of the Singing River Health System Board of Trustees, and work in the Jackson County headquarters..

4.    This Court has personal jurisdiction over Chris Anderson and Michael Crews because they are the former Chief Executive Officer and Chief Financial Officer, respectively, of Singing River Health System, and they reside in this judicial district.

5.     This Court has personal jurisdiction over Stephanie Barnes Taylor because she is a member of the Singing River Health System Retirement Plan Benefits committee and resides in this judicial district.

6.     Venue in federal-question cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b).  Venue in this district and division of court is proper under 28 U.S.C. § 1391(b)(1) because the Defendant Singing River is located in this division of this district, and the conduct and transactions at issue in this matter arose in this division in this district.

## II.     PARTIES

7.     Plaintiff Thomas Jones is a resident citizen of Mobile County, Alabama and is currently employed by Singing River Health System as a campus police officer at Singing River Hospital in Jackson County, Mississippi.  He has been employed by Singing River Health System since 1998.  Plaintiff Jones is a participant in a pension plan maintained by Singing River Hospital System because he is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.

8.     Plaintiff Joseph Charles Lohfink is a resident citizen of Mobile County, Alabama.  Lohfink is a participant in a pension plan maintained by Singing River Hospital System because he is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.

9.     Plaintiff Sue Beavers is a resident citizen of Mobile County, Alabama.  Beavers is employed by Singing River Health Systems and has been so employed for 15 years.  Beavers is a participant in a pension plan maintained by Singing River Hospital

System because she is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.

10.     Plaintiff Rodolfoa Rel is a resident citizen of Mobile County, Alabama and retired from Singing River in 1999. He is currently drawing retirement benefits.

11.     Hazel Reed Thomas is a resident citizen of Mobile County, Alabama She retired from Singing River and is currently drawing retirement benefits.

12.     Defendant Singing River Health Services Foundation is a 501(c)(3) non-profit corporation organized under, and governed by, Mississippi law, and is headquartered in Jackson County, Mississippi. Singing River Health Services Foundation is the employer responsible for maintain the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

13.     Defendant Singing River Health System Foundation is a 501(c)(3) non-profit corporation organized under, and governed by, Mississippi law, and is headquartered in Jackson County, Mississippi. Singing River Health System Foundation is the employer responsible for maintain the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

14.     Defendant Singing River Hospital System Foundation, Inc. is a 501(c)(3) non-profit corporation organized under, and governed by, Mississippi law, and is headquartered in Jackson County, Mississippi. Singing River Hospital System Foundation, Inc. is the employer responsible for maintain the SRHS Plan and is,

therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

15.     Defendant Singing River Hospital System Employee Benefit Fund, Inc. is a 501(c)(3) non-profit corporation organized under, and governed by, Mississippi law, and is headquartered in Jackson County, Mississippi.

16.     Defendant Singing River Hospital System is a 501(c)(3) non-profit corporation organized under, and governed by, Mississippi law, and is headquartered in Jackson County, Mississippi. Singing River Hospital System is the employer responsible for maintain the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

17.     Defendant Transamerica Retirement Solutions Corporation is a Delaware Corporation with its principle place of business in New York.

18.     Defendant KPMG, LLP is a Delaware Corporation with its principle place of business in Wilmington, Delaware.

19.     Defendant, Michael J. Heidelberg, is a Mississippi resident. He serves as the President of the SRHS Board of Trustees, initially appointed in July 1998. Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

20.     Defendant, Michael D. Tolleson, is a Mississippi resident. He serves as the Vice President of the SRHS Board of Trustees, initially appointed in January 2001. Upon information and belief, this Defendant's job responsibilities include fiduciary

oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

21.     Defendant, Tommy Leonard, is a Mississippi resident. He serves as a Member of the SRHS Board of Trustees, initially appointed in July 2009. Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

22.     Defendant, Lawrence H. Cosper, is a Mississippi resident. He serves as a Member of the SRHS Board of Trustees, initially appointed in January 2007. Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

23.     Defendant, Morris G. Strickland, is a Mississippi resident. He serves as a Member of the SRHS Board of Trustees, initially appointed in January 2008. Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

24.     Defendant, Ira Polk, is a Mississippi resident. He serves as a Member of the SRHS Board of Trustees, initially appointed in January 2010. Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

25.     Defendant, Stephen Nunenmacher, is a Mississippi resident. He serves as a Member of the SRHS Board of Trustees, initially appointed in October 2012. Upon

information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

26. Defendant, Hugo Quintana, is a Mississippi resident. He serves as a Member of the SRHS Board of Trustees, initially appointed in October 2013. Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

27. Defendant, Chris Anderson, is a Mississippi resident. He served as the Chief Executive Officer of SRHS until March 2014. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA during the relevant time period.

29. Defendant, Stephanie Barnes Taylor, is a Mississippi resident. She is on the Singing River Health System Retirement Plan Benefits Committee. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA during the relevant time period.

30. Defendant, Michael Crews, is a Mississippi resident. He is the former Chief Financial Officer of SRHS. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA during the relevant time period.

31.     Defendant Singing River Health System is a 501(c)(3) non-profit corporation organized under, and governed by, Mississippi law, and is headquartered in Jackson County, Mississippi.  Singing River Health System is the employer responsible for maintain the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

### III.     BACKGROUND

32.     Singing River Health System is a not-for-profit corporation organized under the laws of Mississippi.  It operates two hospitals, Singing River Hospital in Pascagoula and Oceans Springs Hospital, in addition to a number of community medical clinics and doctors' offices throughout the Gulf Coast.

33.     SRHS is currently the largest employer in Jackson County, with approximately 2,400 employees and over 600 retirees.

34.     The present governance and leadership of SRHS is composed of two groups: (i) The Board of Trustees, which holds all key operational powers, including approving long-range strategic plans, allocation of capital, joint ventures, and major acquisitions and sales; and (ii) the Executive Leadership Team, which is appointed by the Board and charged with providing leadership and organizational management in the areas of operations, mission integration, finance and support services, as well as leadership in the strategic direction of the organization.

35.     SHRS maintains the Singing River Health System Pension Plan (the "Plan"), which is a defined benefit pension plan covering all of its full-time employees who were hired before October 1, 2011.

36.     The Health System created this Plan in 1983 following the decision to cut ties with the Public Employees' Retirement System of Mississippi in order to self-administer a similar Plan available only to the Health System employees.

37.     According to Plan documents, the Health System is required to "make such contributions from time to time, which . . . shall be necessary as determined by the Actuary to provide the benefits of this Plan."

38.     On September 15, 2011, then Chief Executive Officer Defendant Chris Anderson issued a memorandum which informed all employees that effective October 1, 2011, the Retirement Plan would be closed to employees hired on or after that date. It assured employees that the retirement plan would "remain in effect for all current employees."

39.     On October 1, 2011, the Plan was frozen to new employees.

40.     For several years prior to 2013, KPMG provided audit services to Jackson County which included auditing SRHS. Those audits expressed the opinion the Plan was adequately funded when it was not. In fact, had the audits accurately disclosed the extent of the underfunding liability caused the going concern prospect of the SRHS entities to be in doubt.

41.     KPMG's misstatement of the true financial situation relating to the Plan was the result of an ongoing conspiracy between the Defendants to suppress the true financial picture of the Plan and the hospital. Alternatively, the failure to disclose the true financial situation relating to the underfunded liability was the result of negligence in the performance of the audit.

42.     Defendant Transamerica annually represented to the Plan participants that their retirement was vested at levels consistent with the Plan documents. Those representations were false, and Transamerica knew, or should have known, that as of at least 2009 the Plan was not going to be able to pay the promised benefits.

43.     In July, 2014, Horne LLP released its audit of the 2013 financial documents. Prior to this time, audits were performed by KMPG. Horne found that a prior period adjustment of the accounts was necessary in the amount of $61,608,000 for patient accounts receivable.

44.     As of November 2014, the Plan was unfunded by at least $149 million.

45.     The Plan is a plan, fund, or program that was established or maintained by Singing River Health System and by which its express terms and surrounding circumstances provide retirement income to employees and/or result in the deferral of income by employees to the termination of their employment or beyond. As such, the Plan meets the definition of "employee pension benefit plans" within the meaning of ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A).

46.     The Plan does not provide for an individual account for each participant and does not provide benefits solely upon the amount contributed to a participant's account. As such the Plan is a defined benefit plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and are not individual account plans or "defined contribution plans" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

47.     As an employer establishing and/or maintaining the SHRS Plan, Defendant SHRS is and has been the Plan Sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B), at least since 1983.

48.     Upon information and belief, the terms of the instrument under with the Plan is operated specifically designates the "Employer, acting through its Executive Director" to be the Plan Administrator, which is sufficient to meet the requirements of ERISA section 402, 29 U.S.C. § 1102. As such, Defendant SHRS is also a fiduciary with respect the Plan within the meaning of ERISA section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the plans.

49.     Defendant SHRS is also a fiduciary with respect to the Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because it exercises discretionary authority or discretionary control respecting management of the Plan, exercises authority and control respecting management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan.

50.     Defendants Transamerica Retirement Solutions Corporation and KPMG, LLP are also fiduciaries with respect to the Plan because they exercise discretionary authority or discretionary control respecting management of the Plan, exercises authority and control respecting management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan.

51.     Defendants Michael J. Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, Hugo Quintana, Kevin Holland, Chris Anderson, Stephanie Barnes Taylor, and Michael Crews are also fiduciaries with respect to the Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because they exercise discretionary authority or discretionary

control respecting management of the Plan, exercises authority and control respecting management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan.

## IV.   CLASS ALLEGATIONS

52.     Plaintiffs bring this actions as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated: Any and all current and former employees of Singing River Health System hired full time before October 1, 2011 who contributed to the Plan and who, by law and/or contract, were entitled to receive contributions paid by their employer, but who did not. Excluded from the Class are fiduciaries of the Plan, including the individual Defendants.

### A.     Numerosity

53.     The exact number of Class members is unknown to the Plaintiffs at this time, but may be readily determined from records maintained by Singing River Health System.   SHRS currently employees approximately 2,400 individuals and has approximately 600 former employees who are now retirees.   Upon information and belief, many if not all of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

### B.     Commonality

54.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including: (1) whether the Plan is exempt from ERISA as a "governmental plan," and, if not, (2)

whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA or state law.

55.     The issues regarding relief are also common to the members of the Class as relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and funding requirements of ERISA; and (3) an order requiring Defendants to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class, or to otherwise compensate the Plan.

### C.     Typicality

56.     Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice, and/or course of conduct and because all Class members are similarly affected by Defendants' wrongful conduct.

57.     Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally.   Specifically, the equitable relief sought consists primarily of a declaration that the Plan is an ERISA covered plan that must comply with the administration and funding requirements of ERISA.  In addition, to the extent Plaintiffs seek monetary relief; it is for damages to the Plan and for civil fines to the Class, in the same statutory daily amount for each member of the Class.

58.     Defendants do not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claim atypical of the remainder of the Class.

### D.     Adequacy

59.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

60.     Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

61.     The corporate and individual Defendants have no unique defenses against the Plaintiffs that would interfere with the Plaintiffs' representation of the Class.

62.     Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

### E.     Rule 23(b)(1) Requirements

63.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

64.     The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interest of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

### F.     Rule 23(b)(2) Requirements

65.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

### G.      Rule 23(b)(3) Requirements

66.      If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plan is exempt from ERISA as a "governmental plan," and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.      Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than as a class action because the equitable relief sought by any Class member will either insure to the benefit of the Plan or affect each class member equally;

B.      Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.      There is no other ligation began by any other Class members concerning the issues raised in this litigation;

D.      This litigation is properly concentrated in this forum, which is where Defendant SHRS is headquartered and where all of the individual defendants reside.

E.      There are no difficulties managing this case as a class action.

## V.    CAUSES OF ACTION

### COUNT I
**(U. S. Contract Clause Claim)**

67.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

68.    The power of states and their political subdivisions to impair contractual obligations is expressly prohibited by the United States Constitution.  See U. S. Const. Art. I, § 10, Cl. 1: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

69.    The Contract Clause of the United States Constitution restricts Defendant Singing River from enacting and enforcing laws that adversely affect vested pension benefits of public employees.

70.    Because the annual decision by the Defendant Singing River from at least 2009 to the present to refuse to match the employee pension plans diminish vested pension benefits and because Defendant's actions were neither reasonable nor necessary and because alternatives were available to Defendant Singing River to shore up the Pension Plans funding without breaching the contractual rights of the Plaintiffs, Defendant violated the Contract Clause of the United States Constitution.  Moreover, Defendant also violated the Contract Clause by refusing to provide Plaintiffs a return on their investment in accordance with similar standard investments during the time period Defendant Singing River possessed their retirement funds.

16

## COUNT II

### (U. S. Takings Clause Claim)

71.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

72.     The Takings Clause of the United States Constitution states "private property [shall not] be taken for public use, without just compensation." U. S. Const. Amend. V. 27. The Takings Clause of the United States Constitution is binding on the states through the Fourteenth Amendment.

73.     Plaintiffs had a legitimate expectation that they would receive annual matching contributions to their pensions at the levels specified under the Benefit Plan in effect when they began contributing to the Plan and that their payments into the fund would accrue income in accordance with standard retirement investments.

74.     Because the annual decision by the Defendant from at least 2009 to the present to refuse to match the employee pension plans diminish vested pension benefits of Plaintiffs without just compensation and their decision to pay them only the interest accrued on the amounts they contributed diminished the return on said investments amounting to a taking without just compensation, Defendant Singing River has violated the Takings Clause of the Constitution of the United States.

## COUNT III
### (Violation of 42 U.S.C. § 1983 – Contract Clause
### (Against Individual Defendants in their official capacities only)

75.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

76.     42 U.S.C. § 1983 provides:

>   [e]very person who, under color of any statute, ordinance,
>   regulation, custom, or usage of any State . . . subjects, or causes to
>   be subjected, any citizen of the United States ... to the deprivation
>   of any rights, privileges, or immunities secured by the Constitution
>   and laws, shall be liable to the party injured in an action at law, suit
>   in equity, or other proper proceeding for redress . . . .

77.     Individual Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

78.     Individual Defendants have acted under color of law by participating in the decision to refuse to fund the Pension Plans to match employee contributions annually since 2009 and impairing the contractual rights of the Plaintiffs Members to receive pension benefits at the level in accordance with the Plan in effect at the time they made contributions to their pensions.

79.     Individual Defendants have violated the rights of Plaintiffs secured by the Contract Clause of the United States Constitution.

## COUNT IV
### Violation of 42 U.S.C. § 1983 -- Takings Clause
### (Against Individual Defendants in their official capacities only)

80.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

81.     Individual Defendants have acted under color of law by participating in the decision to refuse to fund the Pension Plans to match employee contributions annually since 2009 and taking the Plaintiffs' private property for public use without just compensation.

82.     Individual Defendants have deprived Plaintiffs of their rights secured by the Takings Clause of the United States Constitution.

## COUNT V
### (Mississippi Constitution Contract Clause Claim)

83.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

84.     The power of Mississippi and its political subdivisions to impair contractual obligations is expressly prohibited by the Mississippi Constitution.  Art. 3, Sect. 16: "Ex post facto laws, or laws impairing the obligation of contracts, shall not be passed."

85.     The Contract Clause of the Mississippi Constitution restricts Defendant Singing River from enacting and enforcing laws that adversely affect vested pension benefits of public employees.

86.     Because the annual decision by the Defendant Singing River from at least 2009 to the present to refuse to match the employee pension plans diminish vested pension benefits and because Defendants' actions were neither reasonable nor necessary and because alternatives were available to Defendants to shore up the Pension Plans funding without breaching the contractual rights of the Plaintiffs, Defendants violated the Contract Clause of the Mississippi Constitution. Moreover, Defendant also violated the Contract Clause by refusing to provide Plaintiffs a return on their investment in accordance with similar standard investments during the time period Defendant Singing River possessed their retirement funds.

## COUNT VI
### (Mississippi Takings Clause Claim)

87.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

88.     The Takings Clause of the Mississippi states "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof . . . ." Mississippi Const. Art. 3, Sect. 17.

89.     The Takings Clause of the Mississippi Constitution is binding on all political subdivisions in this state.

90.     Plaintiffs had a legitimate expectation that they would receive annual matching contributions to their pensions at the levels specified under the Benefit Plan in effect when they began contributing to the Plan and that their payments into the fund would accrue income in accordance with standard retirement investments.

91.     Because the annual decision by the Defendant from at least 2009 to the present to refuse to match the employee pension plans diminish vested pension benefits of Plaintiffs without just compensation, and their decision to pay them only the interest accrued on the amounts they contributed diminished the return on said investments amounting to a taking without just compensation, Defendant Singing River has violated the Takings Clause of the Constitution of Mississippi.

## COUNT VII
## BREACH OF CONTRACT

92.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

93.     The Defendants breached the Plan and its contractual terms each time they refused to contribute funds to the Pension Plan to match the employees' contributions. Upon information and belief, it is alleged the Defendants have breached the contract every year since at least 2009.

94.     The Defendants' breach of contract caused the Plaintiffs' damages as more fully set out herein.

## COUNT VIII
## ACCOUNTING

95.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

96.     The Plaintiffs are entitled to an accounting of all contributions to the Pension Plan and payments from the Pension Plan.

## COUNT IX
## DECLARATORY JUDGMENT

97.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

98.     The Plaintiffs are entitled to a declaratory judgment under Rule 57 Fed. R. Civ. P. that the Defendants cannot decline to contribute to the Pension Plan and must make contributions so the Plan has sufficient funding to match all employee contributions.

99.     The Plaintiffs are entitled to a declaratory judgment under Rule 57 Fed. R. Civ. P. that the Defendants' failure to contribute to the Pension Plan amounts matching employee contributions constituted a breach of contract.

100.    The Plaintiffs are entitled to a declaratory judgment under Rule 57 Fed. R. Civ. P. that the Defendants' decision annually since 2009 to refuse to contribute to the Plan to match employee contributions violated the Contract Clause and the Taking Clause and the United States Constitution.

## COUNT X
## INJUNCTIVE RELIEF

101.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

102.    The Plaintiffs are entitled to a preliminary and permanent injunction that the Defendants cannot decline to contribute to the Pension Plan and must make contributions so the Plan has sufficient funding to match all employee contributions.

## COUNT XI
## FRAUD, INTENTIONAL FRAUDULENT
## MISREPRESENTATIONS, AND DECEIT
**(Against, Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities only)**

103.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

104.    The Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, made false representations of material facts with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

105.    More specifically, Defendants' fraud and deceit involved representations to Plaintiffs and the Class that the Plan was adequately funded and that certain defined benefits were payable to each of them.

106.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, failed or intentionally refused to disclose material facts with the intent to deceive and defraud the Plaintiffs which caused the Plaintiffs injuries and damages.  The Plaintiffs relied upon the fraudulent misrepresentations of the Defendants and were, in fact, deceived by the fraud of the Defendants.

22

107.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, misrepresented the financial status of the Plan.

108.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, reassured others of the financial viability of the Plan.

109.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, failed to follow the Plan documents regarding the failure to fund the Plan.

110.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, were responsible for the presentation of false or misleading information to the Plaintiffs in written and verbal communications, including but not limited to the Annual Statements mailed to all participants.

111.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, reviewed and approved annual audit statements containing fraudulent or misleading material.

112.    Defendants Chris Anderson, Stephanie Barnes Taylor and Michael Crews, in their individual capacities, approved and published false representations of the financial viability of the plan in order to secure bond funding.

113.    The fraud, deceit and fraudulent misrepresentations of Defendants, in their individual capacities, caused the Plaintiffs' damages as more fully set out herein and were done so with such malicious intent, intent to defraud, and recklessness as to entitle the Plaintiffs to punitive damages as well.

## COUNT XII
### FRAUD, INTENTIONAL FRAUDULENT MISREPRESENTATIONS, AND DECEIT
(Against Michael J. Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities only)

114.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

115.    The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, failed to reasonably inquire concerning the financial status of the Plan with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

116.    The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, made false representations of material facts with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

117.    More specifically, Defendants' fraud and deceit involved representations to Plaintiffs and the Class that the Plan was adequately funded and that certain defined benefits were payable to each of them.

118.    Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, failed or intentionally refused to disclose material

facts with the intent to deceive and defraud the Plaintiffs which caused the Plaintiffs injuries and damages. The Plaintiffs relied upon the fraudulent misrepresentations of the Defendants and were, in fact, deceived by the fraud of the Defendants.

119. The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, were aware that the Health System had ceased funding the retirement Plan.

120. The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, voted to approve the cessation of mandatory contribution payment by the Health System to the Plan.

121. The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, failed to notify any party of the actions taken to the detriment of the Plan participants.

122. The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, approved yearly financial audits containing fraudulent or misleading information.

123. The Defendants Michael Heidelberg, Michael D. Tolleson, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Stephen Nunenmacher, and Hugo Quintana, in their individual capacities, upon information and belief, approved

and published reports containing fraudulent or misleading information in order to secure bond funding.

124.    The fraud, deceit and fraudulent misrepresentations of Defendants, in their individual capacities, caused the Plaintiffs' damages as more fully set out herein and were done so with such malicious intent, intent to defraud, and recklessness as to entitle the Plaintiffs to punitive damages as well.

### COUNT XIII
### (Claim for Equitable Relief Pursuant to ERISA Section 502(a)(3))

125.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

126.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of this title." Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Plan is not a "governmental plan" within the meaning of ERISA section 1003(b)(1) and 1002(32), 29 U.S.C. §§ 1002(32) and 1003(b)(1).

127.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action to "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiff seeks orders directing the Plan sponsor and administrator, who are unknown to the Plaintiffs at this time, to bring the Plan in to compliance with ERISA, including the reporting, vesting,

and funding requirements of Parts 1, 2, and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

## COUNT XIV
### (Claim for Violation of Reporting and Disclosure Provisions)

128.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

129.    At no time did the Defendants furnish Plaintiff or any member of the Class with a Notice with respect to the Plan pursuant to ERSIA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that SHRS had failed to make payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to the Plan.

130.    SHRS has been the employer that established and/or maintained the Plan.

131.    At no time Defendant SRHS funded the Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

132.    As the employer maintaining the Plan, Defendant SHRS has violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Plan, is liable for its own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiff and each class member up to $110 per day (as permitted by 29 C.F.R. section 2575.502(c)(3)) for each day that Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

## COUNT XV
### (Claim for Failure to Provide Minimum Funding)

133.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

134.   ERISA section 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

135.   As the employer maintaining the Plan, SRHS was responsible for making the contributions that should have been made pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

136.   Since at least 2004, SRHS has failed to make contributions in satisfaction of the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082.

137.   By failing to make the required contributions to the Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERSIA section 302, SRHS has violated ERISA section 302.  29 U.S.C. § 1082.

## COUNT XVI
### (Claim for Breach of Fiduciary Duty Against All Defendants)

138.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

139.   Plaintiff brings this Count for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

### A.   Breach of the Duty of Prudence and Loyalty

140.   ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

      (i)     providing benefits to participants and beneficiaries; and

      (ii)    defraying reasonable expenses of administering the plan;

(b)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…[and]

(c)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

141.    As fiduciaries with respect to the Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Having the authority to enforce the provisions of ERISA at those respective times, ERISA section 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Plan during the times that each was a fiduciary of the Plan.

142.    Defendants have never enforced any of the provisions of ERSIA set forth in Counts XIII – XVI with respect to the Plan.

143.    By failing to enforce the provisions of ERSIA set forth in Counts XIII – XVI, Defendants breached the fiduciary duties that they owed to Plaintiff and the Class.

144.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon,

and profited Defendant SRHS by providing it the use of money owed to the Plan for its general business purposes.

**B.**     **Prohibited Transactions**

145.     ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

146.     ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest, if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

147.     ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to plan in his or her own interest or for his or her own account.

148.     As fiduciaries with respect to the Plan and, with respect to SRHS, as an employer of employees covered by the Plan, and, with respect to individual defendants on the management team and/or Board of Trustees, the Defendants at all relevant times were parties in interest with respect to the Plan pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

149.     By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the Plan to SRHS in violation of ERISA

section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known their failure to enforce the funding obligation constituted such an extension credit.

150.    By failing to enforce the funding obligations created by ERSIA and owed to the Plan, Defendants used Plan assets for SRHS's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Plan assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

151.    By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants used Plan assets in SRHS's interest in violation of ERISA section 406(b)(1)(, 29 U.S.C. § 1106(b)(1).

152.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon.

153.    The failure of Defendants to enforce funding obligations owed to the Plan has profited Defendant SRHS by providing it the use of money owed to the Plan for its general business purposes.

## COUNT XVII
### (Breach of Fiduciary Duty)

154.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

155.    In the event that ERISA does not govern the Plan, Plaintiff pleads alternatively that Defendants Transamerica Retirement Solutions Corporation and KPMG, LLC breached their fiduciary duties to the Plaintiff and members of the Class by:

A.      Failing to disclose that SRHS reduced and ultimately discontinued its contributions to the Plan and that the Plan was grossly underfunded and would likely fail;

B.      Continuing to recommend Plaintiffs and Class Members pay their contributions even though the SRHS had failed to make its mandatory contributions to the Plan.

C.      Failing to disclose to Plaintiffs and Class Members that they were recommending the continuance of obtaining Plaintiffs' and Class Members' contributions even though the SRHS failed to make its mandatory contributions to the Plan.

156.    As a result of Defendants' breach of fiduciary duties, Defendants are liable to Plaintiffs and each Class member for all damages recoverable by law.

157.    As a result of Defendants' breach of fiduciary duties, Plaintiffs and the Class members are entitled to recover costs of their suit and their reasonable attorneys' fees.

## COUNT XVIII
### (Specific Performance)

158.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

159.    In the event that ERISA does not govern the Plan, Plaintiffs plead that specific performance is due to the Plaintiffs and Class Members.

160.    The Plaintiffs and Class Members and Defendants entered into a written contract concerning benefits available as an employee of SRHS.

161.    Plaintiffs and Class Members have complied with all applicable duties imposed by the Defendants in order to receive any retirement benefits.

162.   Defendants have failed to make the mandatory contributions required to adequately pay for the liabilities of the retirement plan.

163.   Defendants now refuse to provide the benefits as defined.

164.   Plaintiffs and Class Members are due the specific performance of the Defendants regarding the retirement benefits.

## COUNT XIX
### (Constructive Trust)

165.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

166.   In the event that ERISA does not govern the Plan, Plaintiffs plead that the a constructive trust for funds and monies wrongfully retained, and converted by the Defendants is due to be created.

167.   Defendants wrongfully failed to make the mandatory contributions to the retirement plans to ensure its financial viability.

168.   Defendants failed to notify the Plaintiffs and Class members that the Retirement Plan was receiving none of the mandatory contributions SRHS was required to make.

169.   Defendants continued to assert that the Plan was fiscally sound and able to provide for its members despite knowledge to the contrary.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and request that the Court award the following said relief:

A.    Declaring that the Plan is an employee benefit plan within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and are not governmental plans

B.    Ordering SRHS to reform the Plan to bring it income compliance with ERISA and to have the Plan comply with ERISA, including as follows:

(1)    Revising Plan documents to reflect that the Plan is a defined benefit plan regulated by ERISA.

(2)    Requiring SRHS to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan, participants, and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2, and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

(3)    Reforming the Plan to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

(4)    Requiring that SRHS and/or the Board of Trustees to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports and providing Notice of the Plan's funding status and deficiencies.

C.    Requiring Defendants, as fiduciaries of the Pan, to make the Plan whole for any losses and disgorge any profits accumulated as a result of fiduciary breaches.

D.    Appointing an Independent Fiduciary to hold the Plan's assets in trust, to manage and administer the Plan and its assets, and to enforce the terms of ERISA.

E.    Requiring Defendants to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to properly fund the Plan.

F.     Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Plan.

G.     Awarding to Plaintiffs' attorneys' fees and expenses as provided by the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g) and/or other applicable doctrine.

H.     Awarding to Plaintiffs taxable costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

I.     Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law.

J.     Awarding, declaring, or otherwise providing Plaintiffs and the Class with all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), or any other applicable law that the Court deems proper.

## VII.   JURY TRIAL DEMAND

Plaintiffs respectfully demand trial by jury.

## VIII.   DOCUMENT PRESERVATION DEMAND

Plaintiffs demand Defendants preserve all documents, electronically stored information, and tangible things that support any of Plaintiffs' claims, or Defendants' defenses pertaining to the allegations raised in this Complaint.

**RESPECTFULLY SUBMITTED**, this the 12th day of December, 2014.

_____
JAMES R. REEVES, JR. (MS Bar #9519)
Reeves & Mestayer, PLLC
Post Office Box 1388
Biloxi, Mississippi  39533
Telephone:     (228) 374-5151
Facsimile:      (228) 374-6630
jrr@rmlawcall.com

_____
DAVID G. WIRTES (MS Bar #104414)
Cunningham Bounds LLC
1601 Dauphin Street
Mobile, Alabama  36604
Telephone:     (251) 471-6191
Facsimile:      (251) 479-1031
dgw@cunninghambounds.com

ATTORNEYS FOR PLAINTIFFS

**DEFENDANTS MAY BE SERVED ACCORDING TO THE LAW.**