IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS JONES, et al** | * | **PLAINTIFFS** |
| | * | |
| VS. | * | CIVIL ACTION NO. 1:14cv447 LG-RHW |
| | *   c/w | 1:15-cv1-LG-RHW |
| | * | 1:15-cv44-LG-RHW |
| | * | |
| **SINGING RIVER HEALTH SERVICES** | * | |
| **FOUNDATION, et al** | * | **DEFENDANTS** |

**MOTION FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT AGREEMENT**

COME NOW the Jones Plaintiffs and move this Court to issue a preliminary approval of the settlement of Case No. 1:14-cv-447-LG-RHW. In support of this motion, the Jones Plaintiffs state as follows:

1.  The following parties and/or interested entities have entered into a Stipulation and Agreement of Compromise and Pro Tanto Settlement ("Settlement Agreement"), which is attached as Exhibit 1:

    (a) Thomas Jones, Joseph Charles Lohfink, Sue Beavers, Rodolfoa Rel, Hazel Reed Thomas ("Jones Plaintiffs"), Regina Cobb, Susan Creel, Phyllis Denmark ("Cobb Plaintiffs"), and Martha Ezell Lowe ("Lowe Plaintiff"), individually and as representatives of an agreed-upon class of similarly situated persons, who collectively are the plaintiffs ("Federal Plaintiffs" or "Representative Plaintiffs") in the above-captioned federal proceedings, respectively;

    (b) Donna B. Broun, Alisha Dawn Smith, Johnys Bradley, Cabrina Bates, Vanessa Watkins, Bart Walker, Linda D. Walley, and Virginia Lay, individually as beneficiaries of and derivatively for and on behalf of Singing River Health System Employee's Retirement Plan And Trust ("State Plaintiffs") (State Plaintiffs and Federal Plaintiffs are collectively referred to as "Plaintiffs");

1

(c) Singing River Health System Employees' Retirement Plan and Trust and Special Fiduciary (collectively, the "Plan" or "Trust")[1];

(d) Singing River Health System, its current and former Board of Trustees (individually and in their official capacities), agents, servants and/or employees ("SRHS");

(e) Singing River Health Services Foundation, Singing River Health System Foundation f/k/a Coastal Mississippi Healthcare Fund, Inc., Singing River Hospital System Foundation, Inc., Singing River Hospital System Benefit Fund, Inc., and Singing River Hospital System and all of their current and former employees, agents, and inside and outside counsel and their firms (the "Other SRHS Defendants"); and

(f) current and former Trustees of the Trust (in their individual and official capacities) ("Plan Trustees").

Jackson County, Mississippi and the Jackson County Board of Supervisors (collectively, "Jackson County") approved the Settlement Agreement as to form and to acknowledge Jackson County's rights and responsibilities under the Settlement Agreement. The Settlement Agreement completely resolves this matter with respect to the claims or potential claims between the signatories.[2]

2. The proposed settlement is the culmination of over a year of litigation, mediation, and negotiation regarding SRHS's alleged failure to make actuarially determined Annual Required Contributions ("ARC") to the Trust between 2009 and 2014. SRHS's practice of failing to contribute to the Trust was challenged by the filing of the initial Complaint in *Jones, et al v. Singing River Health Services Foundation, et al.*, Case No. 1:14-cv-447-LG-RHW, which was later

---

[1] The Special Fiduciary has indicated his intent to sign the Agreement following the resolution of pleadings that he intends to file in the Jackson County Chancery Court.

[2] Solely for the purposes of the Settlement Agreement, and without any prejudice to the parties to take a contrary position in future litigation, Transamerica Retirement Solutions Corporation ("Transamerica"), KPMG, LLP ("KPMG"), FiduciaryVest, LLC, and Trustmark National Bank (and any of its related affiliates), are not "agents" or "employees" of SRHS as those terms are used in the Settlement Agreement. The signatories to the Settlement Agreement wish to make clear their intent that any claims that have been or could be made against Transamerica, KPMG, FiduciaryVest, LLC, and Trustmark National Bank (and any of its related affiliates) are not released as part of the Settlement Agreement.

2

consolidated with *Cobb, et al. v. Singing River Health System, et al.*, Case No. 1:15-cv-1-LG-RHW and *Lowe v. Singing River Health System, et al.*, Case No. 1:15-cv-44-LG-RHW.

3.  After extensive formal and informal discovery, the parties reached a settlement that requires SRHS to pay $156,400,000 (less a negotiated amount of attorneys' fees) to the Trust over time ("Settlement Payment") for the benefit of Class Members. After subtracting the negotiated amount of attorneys' fees, the Settlement Agreement requires SRHS to deposit $149,950,000 of the Settlement Payment into the Trust over time, which is equivalent to the Jones Plaintiffs' Counsels' calculation of the present value of the annual required contributions that SRHS failed to make between 2009 and 2014.[3] If this Settlement Agreement is approved: (1) the

---

[3] The calculation of the present value of the missed contributions to the Plan for years ending September 30, 2009 through September 30, 2014 consists of taking the actuarially determined Annual Required Contribution ("ARC") to the Trust for each year, and subtracting from that the SRHS contributions made, subtracting the amortization amounts of the prior years' unfunded contributions that are included in the ARC (previous funding shortfalls are amortized over 30 years and included in the ARC; therefore, these amounts must be removed), and subtracting interest on amortization amounts of the unfunded contributions that was added into the ARC for each year.

Plaintiffs' Counsels' calculation of the present value of the missed contributions between 2009 and 2014 is $55,714,784. Plaintiffs' Counsels' calculation of the present value of the $149,950,000 that the Settlement Agreement requires that SRHS deposit into the Trust for the benefit of the Class members over time is $55,950,875. Attorneys' fees will be paid by SRHS in addition to the amount that is required to fully refund the missed annual required contributions to the Trust.

**SRHS Matter**
**Analysis of Annual Required Contributions, Amortization and Interest**
**2009 - 2014**

| Year ending 9/30 | Annual Required Contribution (ARC) | Employer Contributions | Amortization of prior year funding loss included in ARC | Less interest* on Amortized Amounts included in ARC | ARC, net of employer contributions, amortization & interest | Beginning Balance on 10/1 (Including Interest) | Calculated Interest | Interest Rate per LaPorte | Ending Balance on 9/30 (Including Interest) |
|---|---|---|---|---|---|---|---|---|---|
| FY 2009 | $ 4,522,625 | $ (2,000,000) | $ - | | $ 2,522,625 | $ - | $ - | | $ 2,522,625 |
| FY 2010 | $ 4,409,160 | $ - | $ (180,705) | $ (16,263) | $ 4,212,192 | $ 2,522,625 | $ 31,028 | 1.23% | $ 6,765,845 |
| FY 2011 | $ 7,283,090 | $ - | $ (518,792) | $ (44,097) | $ 6,720,201 | $ 6,765,845 | $ 705,001 | 10.42% | $ 14,191,047 |
| FY 2012 | $ 8,964,565 | $ - | $ (1,111,830) | $ (94,506) | $ 7,758,229 | $ 14,191,047 | $ (147,587) | -1.04% | $ 21,801,689 |
| FY 2013 | $ 11,434,823 | $ - | $ (1,918,149) | $ (163,043) | $ 9,353,631 | $ 21,801,689 | $ 3,704,107 | 16.99% | $ 34,859,427 |
| FY 2014 | $ 18,388,795 | $ - | $ (2,456,284) | $ (159,658) | $ 15,772,853 | $ 34,859,427 | $ 5,082,505 | 14.58% | $ 55,714,784 |
| Total | $ 55,003,058 | $ (2,000,000) | $ (6,185,760) | $ (477,567) | $ 46,339,731 | | $ 9,375,054 | | |

\* - Interest rate used is the same as used in the calculation of the ARC (see annual actuarial reports)

3

Class Members will be returned to the same position in which they would have been had SRHS made all of the annual required contributions to the Trust between 2009 and 2014; and (2) the negotiated amount of the attorneys' fees of $6,450,000 and expenses of $125,000 will be paid by SRHS in addition to the $149,950,000 that is required to fully refund the missed annual required contributions to the Trust.

    4.    The principal features of the Settlement Agreement include all of the following:

- SRHS must deposit $149,950,000 into the Trust over time and pay a negotiated amount of attorneys' fees up to $6,450,000 and $125,000 in expenses (subject to the approval of the Court). The amount to be deposited into the Trust over time is equivalent to the Jones Plaintiffs' Counsels' calculation of the present value of the annual required contributions that SRHS failed to make between 2009 and 2014.

- To support indigent care and principally to prevent default on a bond issue by supporting the operations of SRHS, Jackson County will pay $13,600,000 to SRHS between 2016 and 2024.

- Should SRHS default on its obligation to make a payment to the Trust at any time over the next 35 years pursuant to the schedule outlined in the Settlement, there shall be a summary proceeding in the Jackson County Chancery Court ("Chancery Court") through which the Chancery Court may enter judgment on 10 days' notice in favor of the Trust and against SRHS for the unpaid balance of the Settlement Payment.

- The Chancery Court has appointed a Special Fiduciary for the Trust ("Special Fiduciary"), whose sole fiduciary responsibility is and shall be to the Trust. The settlement provides that the Special Fiduciary will report to the Chancery Court on a quarterly basis regarding the financial condition of SRHS, the pension plan and the status of the repayment schedule.

- The Settlement Payment may require modification of the Plan to equitably distribute the benefits paid. The settlement provides that any adjustment to the Plan can only be done with Special Fiduciary recommendation and Chancery Court approval after sixty (60) days' notice to the Class Members and opportunity for hearing. If the Chancery Court orders any modification and/or termination of the Plan, then the Class Members will be bound by the Court's/Special Fiduciary's findings, subject to their rights to appeal any order of said court.

- This Settlement does not change the terms of the Plan distributions that are unrelated to this Settlement, which may be modified or terminated only with the approval of the Special Fiduciary and the Chancery Court. Except as provided in the Settlement, the current status of the Plan shall remain unchanged until the Chancery Court orders otherwise.

- SRHS also agreed to pay incentive rewards totaling $12,500, to be split between the Representative Plaintiffs in the federal court actions and some of the plaintiffs in the Jackson County Chancery Court actions.[4]

5.  The Settlement Agreement is based upon the certification of the following mandatory class pursuant to Rule 23(b)(1)(A) or (B) or (b)(2) of the Federal Rules of Civil Procedure:

> All current and former employees of Singing River Health System who participated in the Singing River Health System Employees' Retirement Plan and Trust, including their spouses, alternate payees, death beneficiaries, or any other person to whom a plan benefit may be owed.

The Settlement Agreement provides substantial relief for the claims asserted by the Plaintiffs. The terms of the settlement are fair, reasonable and adequate, and the Settlement Agreement is the product of extensive and vigorous negotiation conducted during multiple separate mediation sessions as well as numerous telephonic and in-person meetings between the signatories.

7.  In determining whether to give final approval to the proposed settlement, the cardinal rule is that the Court must find that the settlement is fair, adequate and reasonable, and is not the product of collusion. In determining whether the settlement meets these goals, the Court will examine six criteria, described below. *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983); *Parker v.*

---

[4] See *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 367-68 (S.D. Miss. 2003) (approving special payments totaling $45,500 to Class Members other than the Class Representatives of the present action, including class representatives in other related federal class actions and individual plaintiffs in related state court actions, given that those other plaintiffs "contributed to the settlement.").

*Anderson*, 667 F.2d 1204, 1209 (5th Cir.1982)). Each of these factors supports the conclusion that this settlement is fair, adequate and reasonable.

 (a) **The existence of fraud or collusion behind the settlement.** The settlement was the result of rigorous arms-length bargaining among multiple parties and other interested entities that took place over the last year. Additionally, the settlement negotiations were conducted under the direction of an experienced mediator, former Chief United States Bankruptcy Judge for the North District of Mississippi, David M. Houston, who was appointed by this Court. *See* Doc. No. 102.

 (b) **The complexity, expense and duration of the litigation.** This settlement is the result of over a year of litigation. The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time. The pleadings and briefs already filed in this Court demonstrate that this case has been, and would have continued to be, difficult and expensive to resolve. Settlement of this action is in the best interests of judicial economy and the Settlement Class.

 (c) **The stage of proceedings and the amount of discovery concluded.** This settlement was reached after lengthy formal and informal discovery. Numerous consulting experts were retained to thoroughly and independently examine and evaluate the thousands of pages of financial documents produced in this case. The parties were in a good position to assess the respective weaknesses and strengths of the claims, and this Court has a sound basis to judge whether the settlement is fair at this stage in the proceedings. Moreover, Trust assets are currently being depleted. The Plan continues to pay all retirees and other beneficiaries as set forth in the Plan and continues to accrue retirement liabilities on its monthly interim financial statements. *See* Doc. No. 21. However, the three percent deduction from active employees' pay has been eliminated. *Id.* A settlement at this stage of the litigation preserves the maximum amount of Trust assets available for the beneficiaries while restoring those that Plaintiffs allege SRHS should have contributed between 2009 and 2014.

 (d) **The probability of Plaintiff's success on the merits.** The Jones Plaintiffs firmly stand behind their Complaint and assert that their claims in this action are meritorious. However, the Jones Plaintiffs recognize the complexities and uncertainties characteristic of this type of litigation, and, perhaps more importantly, acknowledge the financial challenges currently faced by Singing River Health System. The proposed settlement resolves these uncertainties for the Settlement Class members and for SRHS. The parties properly elected to quantify their risks and benefits by this settlement. The settlement provides substantial relief to the Class and vindicates the Court process.

(e) **The range of possible recovery.** Given the restoration of the missed contributions between 2009 and 2014 as well as the additional safeguards built into this agreement, the settlement provides substantial relief to Class Members, particularly when weighed against the expense and uncertainty of litigation, which, if pursued to the end, would result in a substantial depletion of remaining Trust assets.

(f) **The opinions of class counsel, class representatives and absent class members.** Class counsel fully endorse the settlement as being fair and reasonable for the class. No signatory to the Settlement Agreement has suggested otherwise. The settlement provides meaningful relief to the class and is due to be approved.

8. When determining whether to approve a class action settlement, the Court conducts its analysis in two steps. First, the Court makes a preliminary fairness evaluation of the proposed settlement. *See* Manual for Complex Litigation, 4th § 21.632 (2004). This motion seeks such preliminary approval, pursuant to which the Court evaluates the likelihood that it will approve the settlement during the second stage of review (after the completion of a full fairness hearing). During the preliminary evaluation, the Court examines the submitted materials and determines whether the proposed settlement appears fair on its face. *Cope v. Duggins*, 2001 WL 333102 *1 (E.D. La. 2001).

9. Federal Civil Procedure Rule 23(a) enumerates the following four basic prerequisites that must be established before any action may be maintained as a class action, which are enumerated and discussed below:

(1) **The class must be so numerous that joinder of all members is impracticable.** There are approximately 3,138 individuals who are members of the Plan, according to documents produced by SRHS in this matter. The prosecution of this many separate actions would be a substantial drain on the resources of the Court and of the defendants. The Fifth Circuit has held that while the number of class members alone is not determinative of whether joinder is impracticable, a class consisting of 100 to 150 members is within the "range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999), *abrogated in part on other grounds by, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed. 2d 374 (2011).

7

(2) **There must be questions of law or fact common to the class.** "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012). There are numerous questions of law or fact that meet this test, including, for example: (a) whether Singing River Health System was, in fact, required to make the actuarially determined required contributions to the Trust each year; (b) the amount of the annual required contributions that should have been made; (c) the rate at which the money in the Trust would have grown had it been deposited as required; and (d) whether those missed contributions were debts owed to the Plan, among many others. The Representative Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

(3) **The claims of the representative parties must be typical of the claims of the class.** The typicality inquiry focuses on the similarity between the named Plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. *Mullen*, 186 F.3d at 625, *abrogated in part on other grounds by, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). The Jones Plaintiffs' claims are typical of the claims of the Class because they all arise from the common course of conduct of SRHS failing to make the annual required contributions to the Plan between 2009 and 2014. The interests of the representative Plaintiffs are coextensive with, and typical of, the claims of the proposed class members.

(4) **The representative parties must be able to fairly and adequately protect the interests of the class.** Two elements must be satisfied for the purpose of addressing adequacy: (1) concerns regarding the qualifications of counsel; and (2) concerns regarding the relationship between interests of the class representative and the interests of other class members. *Smith v. Texaco, Inc.*, 88 F.Supp.2d 663, 677 (E.D. Tex. 2000). The Jones Plaintiffs' interests are sufficiently aligned with those of other class members. The Jones Plaintiffs have assembled a unique and highly qualified litigation team with extensive class action experience, as described at length in Doc. No. 45, which is incorporated by reference herein. Moreover, the proposed settlement and the benefits that it provides to the Class are evidence that Jones Plaintiffs' counsel have vigorously pursued the interest of the class.

10. Certification of a mandatory class is appropriate under Rule 23(b)(1) because the prosecution of separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for SRHS. Rule 23(b)(1)(A), Fed. R. Civ. P.

Because most of the claims asserted by the Plaintiffs would result in plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief or would result in prejudice to the defendants should there be contradictory rulings on issues of whether they acted as fiduciaries or whether the annual contributions were required to be deposited each year in accordance with the actuary's determination. It would also create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B), Fed. R. Civ. P. Certification of a mandatory class is also appropriate under Rule 23(b)(2) because, by failing to make the annual required contributions to the Trust between 2009 and 2014, SRHS has refused to act "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2), Fed. R. Civ. P.

11. The settlement as proposed in the accompanying documents provides substantial relief to the proposed class. The settlement is the product of extensive and vigorous settlement negotiations. The settlement of this action will end lengthy and complex litigation between the signatories to the settlement and provide meaningful and substantial relief to an extensive class of current and former Singing River Health System employees and other beneficiaries.

WHEREFORE, the Jones Plaintiffs request an Order of this Court that: (a) issues its preliminary approval of the settlement; (b) sets a date for a final approval hearing ("Fairness Hearing"); (c) approves the proposed class notice attached as Exhibit 2 and authorizes its dissemination to the Settlement Class; (d) sets deadlines for (i) mailing of the Class Notice, (ii) filing the motion for certification of a settlement class and final approval of settlement, (iii) filing

the petition for approval of attorneys' fees, (iv) filing of objections, and (v) filing other papers in connection with the Fairness Hearing and the consideration of the approval or disapproval of the Settlement; and (e) such other and further orders as may be appropriate.  A proposed order is attached as Exhibit 3.

**RESPECTFULLY SUBMITTED**, this the 3rd day of January, 2016.

| | |
|---|---|
| /s Jim Reeves | /s Lucy E. Tufts |
| JAMES R. REEVES, JR. (MS Bar #9519) | STEVEN L. NICHOLAS (*admitted pro hac vice*) |
| MATTHEW MESTAYER (MS Bar #9646) | LUCY E. TUFTS (*admitted pro hac vice*) |
| Reeves & Mestayer, PLLC | Cunningham Bounds, LLC |
| Post Office Box 1388 | 1601 Dauphin Street |
| Biloxi, Mississippi 39533 | Mobile, Alabama 36604 |
| Telephone: (228) 374-5151 | Telephone: (251) 471-6191 |
| Facsimile: (228) 374-6630 | Facsimile:  (251) 479-1031 |
| jrr@rmlawcall.com | sln@cunninghambounds.com |
| mgm@rmlawcall.com | let@cunninghambounds.com |

**CERTIFICATE OF SERVICE**

The undersigned resident attorney certifies that on this 3rd day of January, 2016, a copy of the foregoing pleading has been mailed, filed via the ECF system, and/or otherwise served on all parties and/or their counsel who have appeared in this case.

Documents to additional defendants named in this pleading may be served according to the

/s Jim Reeves
James R. Reeves, Jr.