# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

THOMAS JONES; JOSEPH CHARLES  *
LOHFINK; SUE BEAVERS;
RODOLFOA REL; and HAZEL REED  *
THOMAS, on behalf of themselves and
Others similarly situated,  *

    Plaintiffs,  *

v.  *

SINGING RIVER HEALTH SERVICES *
FOUNDATION; SINGING RIVER
HEALTH SYSTEM FOUNDATION;  *
SINGING RIVER HOSPITAL SYSTEM
FOUNDATION, INC.; SINGING RIVER *
HOSPITAL SYSTEM EMPLOYEE
BENEFIT FUND, INC.; SINGING  *
RIVER HOSPITAL SYSTEM;
TRANSAMERICA RETIREMENT  *
SOLUTIONS CORPORATION;
KPMG, LLP; SINGING RIVER  *
HEALTH SYSTEM;
    *
and
    *
MICHAEL J. HEIDELBERG;
TOMMY LEONARD; MORRIS G.  *
STRICKLAND; IRA POLK;
ALLEN CRONIER; MARVA  *
FAIRLEY-TANNER; GARY C.
ANDERSON; STEPHANIE BARNES  *
TAYLOR; MICHAEL CREWS; PAUL
GRAYSON CARTER, JR., in their  *
individual and official capacities,
    *
    Defendants.
    *

Civil Action No.:
1:14-CV-00447-LG-RHW
c/w 1:15-CV-00001-LG-RHW
1:15-CV-00044-LG-RHW

---

## THIRD AMENDED CLASS ACTION COMPLAINT

---

**EXHIBIT**

_A_

## JURY TRIAL REQUESTED

COME NOW the Plaintiffs, on behalf of themselves and all others similarly situated, and file this Third Amended Complaint and allege against the Defendants as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 28 U.S.C. § 1343(a)(3) and 29 U.S.C. § 1132(e)(1).

2.      Plaintiffs request that this Court exercise supplemental jurisdiction over any claims to which Paragraph 1 does not apply pursuant to 28 U.S.C. § 1367(a).

3.      This Court has personal jurisdiction over Defendants Singing River Health Services Foundation, Singing River Health System Foundation, Singing River Hospital System Foundation, Inc., Singing River Hospital System Employee Benefit Fund, Inc., Singing River Hospital System, Singing River Health System, Transamerica Retirement Solutions Corporation, and KPMG, LLP because these defendants are headquartered and/or transact business in, and have significant contacts with, this judicial district.

4.      This Court has personal jurisdiction over Michael J. Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, and Allen Cronier because they are current or former members of the Singing River Health System Board of Trustees, and work in the Jackson County headquarters and/or reside in or have significant contacts with this judicial district.

5.      This Court has personal jurisdiction over Gary C. Anderson (hereinafter "Chris Anderson") and Michael Crews because they are the former Chief Executive

Officer and Chief Financial Officer, respectively, of Singing River Health System, and they reside in this judicial district.

6.     This Court has personal jurisdiction over Stephanie Barnes Taylor because she is the former Chief Legal Officer and General Counsel of Singing River Health System, the former Chief Compliance Officer of Singing River Health System, a former member of the Singing River Health System Retirement Plan Benefits Committee, and she resides in this judicial district.

7.     This Court has personal jurisdiction over Paul Grayson Carter, Jr. because he is the former Chief Human Resources Officer of Singing River Health System, and he resides in this judicial district.

8.     This Court has personal jurisdiction over Marva Fairley-Tanner because she was a member of the Singing River Health System Board of Trustees during time periods relevant to the allegations in this lawsuit, and because she resides in this judicial district.

9.     Venue in federal cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b).  Venue in this district and division of court is proper under 28 U.S.C. § 1391(b)(1) because Defendant Singing River Health System is located in this division of this district, and the conduct and transactions at issue in this matter arose in this division of this district.

## II.    **PARTIES**

10.     Plaintiff Thomas Jones is a resident citizen of Mobile County, Alabama and is currently employed by Singing River Health System as a campus police officer at

Singing River Hospital in Jackson County, Mississippi.   He has been employed by Singing River Health System since 1998.  Plaintiff Jones is a participant in a pension plan maintained by Singing River Hospital System because he is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.

11.     Plaintiff Joseph Charles Lohfink is a resident citizen of Mobile County, Alabama.   Lohfink is a participant in a pension plan maintained by Singing River Hospital System because he is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.

12.     Plaintiff Sue Beavers is a resident citizen of Mobile County, Alabama. Beavers is employed by Singing River Health Systems and has been so employed for 15 years.  Beavers is a participant in a pension plan maintained by Singing River Hospital System because she is or will become eligible for pension benefits under the Plan to be paid at normal retirement age.

13.     Plaintiff Rodolfoa Rel is a resident citizen of Mobile County, Alabama and retired from Singing River in 1999.  He is currently drawing retirement benefits.

14.     Plaintiff Hazel Reed Thomas is a resident citizen of Mobile County, Alabama.  She retired from Singing River and is currently drawing retirement benefits.

15.     Defendant Singing River Health Services Foundation is a 501(c)(3) non-profit corporation organized under and governed by Mississippi law, and is headquartered in Jackson County, Mississippi.   Singing River Health Services Foundation is the employer responsible for maintaining the Singing River Health System Employees' Retirement Plan and Trust (the "SRHS Plan," the "Plan," "Trust," or "Retirement Trust")

and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

16.     Defendant Singing River Health System Foundation is a 501(c)(3) non-profit corporation organized under and governed by Mississippi law, and is headquartered in Jackson County, Mississippi.   Singing River Health System Foundation is the employer responsible for maintaining the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

17.     Defendant Singing River Hospital System Foundation, Inc. is a 501(c)(3) non-profit corporation organized under and governed by Mississippi law, and is headquartered in Jackson County, Mississippi.   Singing River Hospital System Foundation, Inc. is the employer responsible for maintaining the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

18.     Defendant Singing River Hospital System Employee Benefit Fund, Inc. is a 501(c)(3) non-profit corporation organized under and governed by Mississippi law, and is headquartered in Jackson County, Mississippi.

19.     Defendant Singing River Hospital System is a 501(c)(3) non-profit corporation organized under and governed by Mississippi law, and is headquartered in Jackson County, Mississippi.  Singing River Hospital System is the employer responsible for maintaining the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

20.     Defendant Singing River Health System ("SRHS" or "Health System") is a 501(c)(3) non-profit corporation organized under and governed by Mississippi law, and is headquartered in Jackson County, Mississippi.  Singing River Health System is the employer responsible for maintaining the SRHS Plan and is, therefore, the plan sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

A.      Collectively, the Defendants listed in paragraphs 15 through 20 will be hereinafter referred to as the "SRHS Defendants."

21.     Defendant Transamerica Retirement Solutions Corporation ("Transamerica") is a Delaware Corporation with its principle place of business in New York.

22.     Defendant KPMG, LLP is a Delaware limited liability partnership with its principle place of business in Wilmington, Delaware.

23.     Defendant Michael J. Heidelberg is a Mississippi resident.  He serves as the President of the SRHS Board of Trustees, initially appointed in July 1998.  Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

24.     Defendant Tommy Leonard is a Mississippi resident.  He serves as a Member of the SRHS Board of Trustees, initially appointed in July 2009.  Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

25.     Defendant Morris G. Strickland is a Mississippi resident.  He serves as a Member of the SRHS Board of Trustees, initially appointed in January 2008.  Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

26.     Defendant Ira Polk is a Mississippi resident.  He serves as a Member of the SRHS Board of Trustees, initially appointed in January 2010.  Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

27.     Defendant Allen Cronier is a Mississippi resident.  He serves as a Member of the SRHS Board of Trustees, initially appointed in October 2002.  Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

28.     Defendant Marva Fairley-Tanner is a Mississippi resident.  She served as a member of the SRHS Board of Trustees from January 2005 through January 2010.  Upon information and belief, this Defendant's job responsibilities include fiduciary oversight of the SRHS Plan, and this Defendant is a fiduciary of the Plan within the meaning of ERISA.

      A.     Collectively, the individuals listed in paragraphs 23 through 28 shall be referred to as the "Singing River Health System Board of Trustees," the "SRHS Board of Trustees," or the "Health System Trustees," with the recognition that the membership of this Board of Trustees may have changed over the relevant time period.

29.     Defendant Gary C. "Chris" Anderson is a Mississippi resident. He served as the Chief Executive Officer of SRHS until March 2014. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA.

30.     Defendant Stephanie Barnes Taylor is a Mississippi resident. She served as the Chief Legal Officer and General Counsel of Singing River Health System from at least 2009 to 2014, also served as Chief Compliance Officer of Singing River Health System during all or part of that period, and served as a former member of the Singing River Health System Retirement Plan Benefits Committee. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA.

31.     Defendant Michael Crews is a Mississippi resident. He is the former Chief Financial Officer of SRHS. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA.

32.     Defendant Paul Grayson "Nebo" Carter, Jr. is a Mississippi resident. He is the former Chief Human Resources Officer for SRHS. Upon information and belief, this Defendant's job responsibilities included fiduciary oversight of the SRHS Plan, and this Defendant was a fiduciary of the Plan within the meaning of ERISA.

     A.     Collectively, the individuals listed in paragraphs 29 through 32 shall be referred to as the "Executive Leadership Team," with the recognition that the membership of this team may have changed over the relevant time period.

B.    Collectively, the term "Individual Defendants" shall refer to all of the Defendants listed in paragraphs 23 through 32.

C.    Collectively, the term "Defendants" shall refer to all of the defendants listed in paragraphs 15 through 32.

33.    Plaintiffs filed a Notice of Claim on October 20, 2015, individually and on behalf of others similarly situated, pursuant to the Mississippi Tort Claims Act, Miss. Code § 11-46-1 *et seq.*  This amended complaint has been timely filed within the period of time after which the Notice of Claim was denied and/or the tolling period defined in the statute expired.

### III.    BACKGROUND

34.    Singing River Health System (sometimes referred to hereinafter as "SRHS" or "Health System") is a not-for-profit corporation organized under the laws of Mississippi.  It operates two hospitals, Singing River Hospital in Pascagoula and Oceans Springs Hospital, in addition to a number of community medical clinics and doctors' offices throughout the Gulf Coast.

35.    SRHS is one of the largest employers in Jackson County, with approximately 2,400 employees and over 600 retirees.

36.    The present governance and leadership of SRHS is composed of two groups: (i) The Board of Trustees, which holds all key operational powers, including approving long-range strategic plans, allocation of capital, joint ventures, and major acquisitions and sales; and (ii) the Executive Leadership Team, which is appointed by the Board and charged with providing leadership and organizational management in the areas

of operations, mission integration, finance and support services, as well as leadership in the strategic direction of the organization.

37.     SHRS maintains the Singing River Health System Employees' Retirement Plan and Trust (the "Plan"), which is a defined benefit pension plan covering all of its full-time employees who were hired before October 1, 2011.

38.     The Health System created this Plan in 1983 following the decision to cut ties with the Public Employees' Retirement System of Mississippi in order to self-administer a similar Plan available only to the Health System employees.

39.     According to Plan documents, the Health System is required to "make such contributions from time to time, which . . . shall be necessary as determined by the Actuary to provide the benefits of this Plan." Singing River Health System Employees' Retirement Plan and Trust, § 9.03.

40.     The Plan designates the Health System as the Plan Administrator "to administer the Plan in accordance with its terms." Singing River Health System Employees' Retirement Plan and Trust, § 10.01. The Plan also names the Health System as a fiduciary of the Trust. Singing River Health System Employees' Retirement Plan and Trust, § 10.03. The Health System, through its Trustees, employed professionals such as accountants, actuaries, and attorneys to advise the Health System and to make accountings and calculations necessary to administer the Plan. These professionals included, but were not limited to, KMPG, LLP and Transamerica Retirement Solutions Corporation.

41.     The SRHS Board of Trustees had the responsibility for determining the amount of contributions to be made by the Health System, subject to the advice and

recommendations of an actuary, and the employer had the responsibility for actually making the contributions necessary to provide benefits as described under the Plan. Singing River Health System Employees' Retirement Plan and Trust, §§ 10.02 and 10.03.

42.    Article XIV of the Plan establishes a Trust Fund (hereinafter "Trust Fund" or "Retirement Trust") in which member and employer contributions are deposited. Singing River Health System Employees' Retirement Plan and Trust, § 14.01.  The Plan also created and stated duties for the Trustee of the Retirement Trust, which was required to be either: (a) "a corporation authorized to conduct a banking or trust business and/or (b) one (1) or more individuals."  Singing River Health System Employees' Retirement Plan and Trust, § 15.01.  Although ostensibly separate from the SRHS Board of Trustees pursuant to Article XV, the Trustee for the Retirement Trust was primarily comprised of members of the SRHS Board of Trustees and/or the SRHS Executive Leadership Team – i.e., the Individual Defendants, as that term is defined herein.

A.    The terms "Retirement Trust Trustee(s)" and "Trust Fund Trustee(s)" shall hereinafter refer to the Individual Defendants listed in paragraphs 24 through 33, with the recognition that the appointment of said Trustees may have changed over the relevant time period.

43.    The SRHS Board of Trustees had the sole authority to appoint the Retirement Trust Trustee (§ 15.14) and the sole authority remove Retirement Trust Trustee (§15.08).  Furthermore, the employer, by and through the SRHS Board of Trustees, had the sole authority to amend or terminate the Trust (§§ 11.01 and 12.01).

44.     The Plan designates a Retirement Trust Trustee as a fiduciary with the "exclusive responsibility for and all powers necessary to perform the following duties and functions:

(a) To receive, hold, preserve, manage, and at the direction of the Plan Administrator, invest and re-invest the Trust Fund, so that the Trust Fund's integrity and safety will be maintained for the purpose of the Plan;

(b) To make disbursements from the Plan, to or for the benefit of Plan Members, their heirs and beneficiaries, as may be directed from time to time by the Committee;

(c) To perform such additional duties and functions as may be requested from time to time by the Board of Trustees of the Employer, the Plan Administrator, or the Committee." § 15.01.

In performing its duties, a Retirement Trust Trustee was charged with "do[ing] so in the interest of the members and beneficiaries solely, using the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character." § 15.02.

45.     A Retirement Trust Trustee was also charged with "keep[ing] proper accounts of all investments, receipts, disbursements, and other transactions effected by it" under the Plan. § 15.06.

46.     On September 15, 2011, then Chief Executive Officer Chris Anderson issued a memorandum which informed all employees that effective October 1, 2011, the

Retirement Plan would be closed to employees hired on or after that date. It assured employees that the retirement plan would "remain in effect for all current employees."

47.    On October 1, 2011, the Plan was frozen to new employees.

48.    Since 1978, KPMG (or its predecessor, Peat Marwick) provided audit services SRHS. Those audits expressed opinions regarding the funding policy of the plan, the annual pension costs and net pension liability, trend information, and that the Plan was adequately funded when it was not. In fact, had the audits accurately disclosed the extent of the underfunding liability, they would have caused the going concern prospect of the SRHS Defendants to be in doubt.

49.    KPMG's misstatement of the true financial situation relating to the Plan was the result of an ongoing conspiracy between the Defendants to suppress the true financial picture of the Plan and the hospital. Alternatively, the failure to disclose the true financial situation relating to the underfunded liability was the result of negligence in the performance of the audit.

50.    KPMG and SRHS have a number of written agreements for the auditing of SRHS's financial statements between 2008 and 2012, which are in the form of a series of Engagement Letters.

51.    KPMG is required to perform its accounting duties in accordance with Generally Accepted Auditing Standards ("GAAS"), Generally Accepted Government Auditing Standards ("GAGAS"), and Generally Accepted Accounting Principles ("GAAP").

52.    Pursuant to the Engagement Letters between 2008 and 2012, KPMG issued annual audit reports, each concluding as follows:

13

[I]n our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Singing River Health System. . .and the changes in its financial position and its cash flows for the years then ended, in conformity with U.S. generally accepted accounting principles. . .and certifying that KPMG's audit completed with the standards required under GAAS and GAGAS.

*See, e.g.,* KPMG's Independent Auditor's Report dated June 21, 2013 at 16.

53.     Instead, KPMG's audits were replete with error, did not employ GAAP, and were in breach of the standards imposed by GAAS and GAGAS.

54.     Transamerica provided financial and retirement services to SRHS, including managing fiduciary obligations, streamlining administrative responsibilities, actuarial services, and other tasks designed to maximize the Plan's efficiency. Transamerica provided information to Plaintiffs regarding the Plan and the contributions made to it, including, but not limited to, reports, benefits statements, and other documents.   Defendant Transamerica regularly represented to the Plan participants that their retirement was vested at levels consistent with the Plan documents.   Those representations were false, and Transamerica knew, or should have known, that as of at least 2009 the Plan was not going to be able to pay the promised benefits.

55.     In July 2014, Horne LLP ("Horne") released its audit of the SRHS 2013 financial documents.  Prior to this time, audits were performed by KMPG.  Horne found that a prior period adjustment of the accounts was necessary in the amount of $61,608,000 for participants' accounts receivable.

56.     As of November 2014, the Trust Fund was unfunded by at least $149 million.

57.     The Plan is a plan, fund, or program that was established or maintained by Singing River Health System and/or the SRHS Defendants and by which its express

14

terms and surrounding circumstances provide retirement income to employees and/or result in the deferral of income by employees to the termination of their employment or beyond. As such, the Plan meets the definition of "employee pension benefit plans" within the meaning of ERISA section 3(2)(A), 29 U.S.C. § 1002(2)(A).

58.     The Plan does not provide for an individual account for each participant and does not provide benefits solely upon the amount contributed to a participant's account. As such, the Plan is a defined benefit plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or "defined contribution plan" within the meaning of ERISA section 3(34), 29 U.S.C. § 1002(34).

59.     As an employer establishing and/or maintaining the SHRS Plan, Defendant SRHS and/or the SRHS Defendants are and have been the Plan Sponsor of the SHRS Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B), since at least since 1983.

60.     Upon information and belief, the terms of the instrument under which the Plan is operated specifically designates the "Employer, acting through its Executive Director," to be the Plan Administrator (Singing River Health System Employees' Retirement Plan and Trust, § 10.01), which is sufficient to meet the requirements of ERISA section 402, 29 U.S.C. § 1102. As such, Defendant SRHS and/or the SRHS Defendants are also fiduciaries with respect to the Plan within the meaning of ERISA section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because the Plan Administrator, by the very nature of the position, has discretionary authority or responsibility in the administration of the plans.

61.     Defendant SRHS and/or the SRHS Defendants are also fiduciaries with respect to the Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because they exercise discretionary authority or discretionary control respecting management of the Plan, exercise authority and control respecting management or disposition of the Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the Plan.

62.     Defendants Transamerica Retirement Solutions Corporation and KPMG, LLP are also fiduciaries with respect to the Plan because they exercise discretionary authority or discretionary control respecting management of the Plan, exercises authority and control respecting management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan.

63.     Defendants Michael J. Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Chris Anderson, Stephanie Barnes Taylor, Michael Crews, Marva Fairley-Tanner, and Paul Grayson Carter, Jr. are also fiduciaries with respect to the Plan within the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21), because they exercise discretionary authority or discretionary control respecting management of the Plan, exercises authority and control respecting management or disposition of the Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plan.

## IV.     CLASS ALLEGATIONS

64.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated: All current and former employees of Singing River Health

System who participated in the Singing River Health System Employees' Retirement Plan and Trust, including their spouses, alternate payees, death beneficiaries, or any other person to whom a plan benefit may be owed. Excluded from the Class are fiduciaries of the Plan, including the individual Defendants.

### A. **Numerosity**

65.     The exact number of Class members is unknown to the Plaintiffs at this time, but may be readily determined from records maintained by Singing River Health System.     SRHS currently employs approximately 2,400 individuals and has approximately 600 former employees who are now retirees.     Upon information and belief, many if not all of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

### B. **Commonality**

66.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including: (1) whether the Plan is exempt from ERISA as a "governmental plan," and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA or state law. Other common questions of law and fact include: (a) whether Singing River Health System was, in fact, required to make the actuarially determined required annual contributions to the Trust each year; (b) the amount of the annual required contributions that should have been made; (c) the rate at which the money in the Trust would have grown had it been deposited as required; and (d) whether those missed contributions were debts owed to the Plan.

67.     The issues regarding relief are also common to the members of the Class as relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and funding requirements of ERISA; (3) an order requiring Defendants to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class; or (4) to otherwise compensate the Plan under state or other law.

**C. Typicality**

68.     Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice, and/or course of conduct and because all Class members are similarly affected by Defendants' wrongful conduct.

69.     Plaintiffs' claims are also typical of the claims of the other members of the Class because they all arise from the common course of conduct of SRHS failing to make the annual required contributions to the Plan between 2009 and 2014.  To the extent Plaintiffs seek equitable relief, it will affect all Class members equally.  Specifically, the equitable relief sought consists primarily of a declaration that the Plan is an ERISA covered plan that must comply with the administration and funding requirements of ERISA.  In addition, to the extent Plaintiffs seek monetary relief, it is for damages to the Plan and for civil fines to the Class, in the same statutory daily amount for each member of the Class.

70.     Defendants do not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claim atypical of the remainder of the Class.

**D. Adequacy**

71.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

72.     Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

73.     The corporate and individual Defendants have no unique defenses against the Plaintiffs that would interfere with the Plaintiffs' representation of the Class.

74.     Plaintiffs have engaged counsel with extensive experience prosecuting class actions.

**E. Rule 23(b)(1) Requirements**

75.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

76.     The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interest of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F. Rule 23(b)(2) Requirements**

77.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G. Rule 23(b)(3) Requirements**

78.     If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the vending machines in question are "facilities" that serve the public or are places of public accommodation within the meaning of the Americans with Disabilities Act; (2) whether the 1991 standards or the 2010 amended standards apply to the vending machines in question; and (3) whether the applicable standards have been violated by the Defendants.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      A.     Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than as a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

      B.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

      C.     At the time that the present litigation was originally filed, there was no other litigation by any other Class members concerning the issues raised in this litigation;

D.      This litigation is properly concentrated in this forum, which is where

Defendant SRHS is headquartered and where all of the individual

defendants reside;

E.      There are no difficulties managing this case as a class action.

## V.      CAUSES OF ACTION

### COUNT I
### (U. S. Contract Clause Claim)

79.      Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

80.      The power of states and their political subdivisions to impair contractual obligations is expressly prohibited by the United States Constitution.  See U. S. Const. Art. I, § 10, Cl. 1: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

81.      Upon becoming a member of the Plan, Plaintiffs and each member of the class entered into a binding contract with SRHS and secured a right to the benefits provided under the Plan – in particular, those benefits defined in Article V of the Plan.

82.      Plaintiffs and each member of the Class were induced to commence and continue employment with SRHS in reliance on SRHS's express promise in Article V regarding the benefits to which he or she was entitled.

83.      Plaintiffs and members of the Class view the benefits promised under the Plan as a form of deferred compensation and rely on the benefits as security against destitution in retirement and financial catastrophe.

84.     Between 2009 and the present, acting under color of law, SRHS enacted policies that resulted in inadequate funding of the Plan, which reduced the present value of the total contractual Plan benefits that were promised to the Class.

85.     SRHS's enactment and enforcement of policies that resulted in inadequate funding of the Plan substantially impaired and diminished the contractual rights of the Plaintiffs and members of the Class.

86.     SRHS's impairment of the Plan was neither reasonable nor necessary.

87.     The justification offered by SRHS for its actions in this matter are largely based on the Plan's funding status, which itself was largely caused by SRHS's own longstanding, deliberate and willful underfunding of the Plan.

88.     Because the annual decision by Defendant SRHS from at least 2009 to the present to refuse to contribute to the employee pension plans diminished vested pension benefits and because Defendant SRHS's actions were neither reasonable nor necessary and because alternatives were available to Defendant SRHS to shore up the Plan's funding without breaching the contractual rights of the Plaintiffs, Defendant SRHS violated the Contract Clause of the United States Constitution.  Moreover, Defendant SRHS also violated the Contract Clause by refusing to provide Plaintiffs a return on their investment in accordance with similar standard investments during the time period Defendant SRHS possessed their retirement funds.

## COUNT II
### (U. S. Takings Clause Claim)

89.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

90.     The Takings Clause of the United States Constitution states "private property [shall not] be taken for public use, without just compensation."  U. S. Const. Amend. V. 27.  The Takings Clause of the United States Constitution is binding on the states through the Fourteenth Amendment.

91.     Plaintiffs and each member of the Class have a vested property right to the benefits promised by SRHS under the Plan and to the adequate and proper operation and funding of the Plan.

92.     Plaintiffs and each member of the Class were induced to commence and continue employment with SRHS in reliance on SRHS's express promise in Article V regarding the benefits to which they was entitled.

93.     Plaintiffs and members of the Class view the benefits promised under the Plan as a form of deferred compensation and rely on the benefits as security against destitution in retirement and financial catastrophe.

94.     In exchange for the benefits under the Plan, Plaintiffs and the members of the Class have served SRHS and have contributed substantial sums of their own money to the Plan since the 1980s.

95.     Plaintiffs had a legitimate expectation that they would receive annual contributions to their pensions at the levels specified under the Plan in effect when they began contributing to the Plan and that their payments into the fund would accrue income in accordance with standard retirement investments.

96.     SRHS's enactment and enforcement of policies from at least 2009 to the present to refuse to contribute to and/or adequately fund the Plan and the decision to pay only the interest accrued on the amounts employees contributed resulting in inadequate

and/or the total absence of SRHS's contributions to the Plan, the SRHS's Board of Trustee's knowing and willful failure to fund the Plan, and SRHS's knowing, willful, and systemic underfunding of the Plan by over $150 million, as alleged herein, have substantially and materially impaired and diminished the vested property rights of the members of the Class.

97.     SRHS's enactment and enforcement of policies from at least 2009 to the present to refuse to contribute to and/or adequately fund the Plan and the decision to pay only the interest accrued on the amounts employees contributed (a) diminished the return on investments and (b) diminished vested pension benefits of Plaintiffs without just compensation, which amounted to a taking without just compensation.

98.     Through the foregoing actions, SRHS has confiscated the property of Plaintiffs and the members of the Class without just compensation and violated their due process rights under the "takings" clause of the Fourteenth Amendment to the United States Constitution.

## COUNT III
**(Violation of 42 U.S.C. § 1983 – Contract Clause Against Individual Defendants In Their Official Capacities Only)**

99.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

100.    42 U.S.C. § 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

24

101.    Individual Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

102.    Individual Defendants have acted under color of law by participating in the decision to refuse to fund the Plan annually since 2009 and impairing the contractual rights of the Plaintiffs Members to receive pension benefits at the level in accordance with the Plan in effect at the time they made contributions to their pensions.

103.    Individual Defendants have violated the rights of Plaintiffs secured by the Contract Clause of the United States Constitution.

## COUNT IV
### (Violation of 42 U.S.C. § 1983 -- Takings Clause Against Individual Defendants In Their Official Capacities Only)

104.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

105.    Individual Defendants have acted under color of law by participating in the decision to refuse to fund the Pension Plans annually since 2009 and taking the Plaintiffs' private property for public use without just compensation.

106.    Individual Defendants have deprived Plaintiffs of their rights secured by the Takings Clause of the United States Constitution.

## COUNT V
### (Mississippi Constitution Contract Clause Claim)

107.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

108.    The power of Mississippi and its political subdivisions to impair contractual obligations is expressly prohibited by the Mississippi Constitution. Art. 3,

Sect. 16: "Ex post facto laws, or laws impairing the obligation of contracts, shall not be passed."

109.    The Contract Clause of the Mississippi Constitution restricts Defendant Singing River from enacting and enforcing laws that adversely affect vested pension benefits of public employees.

110.    Because the annual decision by Defendant SRHS from at least 2009 to the present to refuse to contribute to the employee pension plans diminished vested pension benefits and because Defendant's actions were neither reasonable nor necessary and because alternatives were available to Defendant SRHS to shore up the Plan's funding without breaching the contractual rights of the Plaintiffs, Defendant SRHS violated the Contract Clause of the Mississippi Constitution. Moreover, Defendant SRHS also violated the Contract Clause by refusing to provide Plaintiffs a return on their investment in accordance with similar standard investments during the time period Defendant SRHS possessed their retirement funds.

<u>**COUNT VI**</u>
**(Mississippi Takings Clause Claim)**

111.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

112.    The Takings Clause of the Mississippi Constitution states "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof . . . ." Mississippi Const. Art. 3, Sect. 17.

113.    The Takings Clause of the Mississippi Constitution is binding on all political subdivisions in this state.

114.    Plaintiffs and each member of the Class were induced to commence and continue employment with SRHS in reliance on SRHS's express promise in Article V regarding the benefits to which they were entitled.

115.    Plaintiffs and members of the Class view the benefits promised under the Plan as a form of deferred compensation and rely on the benefits as security against destitution in retirement and financial catastrophe.

116.    In exchange for the benefits under the Plan, Plaintiffs and the members of the Class have served SRHS and have contributed substantial sums of their own money to the Plan since the 1980s.

117.    Plaintiffs had a legitimate expectation that they would receive annual contributions to their pensions at the levels specified under the Plan in effect when they began contributing to the Plan and that their payments into the fund would accrue income in accordance with standard retirement investments.

118.    SRHS's enactment and enforcement of policies from at least 2009 to the present to refuse to contribute to and/or adequately fund the Plan and the decision to pay only the interest accrued on the amounts employees contributed resulting in inadequate and/or the total absence of SRHS's contributions to the Plan, the SRHS's Board of Trustee's knowing and willful failure to fund the Plan, and SRHS's knowing, willful, and systemic underfunding of the Plan by over $150 million, as alleged herein, have substantially and materially impaired and diminished the vested property rights of the Plaintiffs and the members of the Class.

119.    SRHS's enactment and enforcement of policies from at least 2009 to the present to refuse to contribute to and/or adequately fund the Plan and the decision to pay

only the interest accrued on the amounts employees contributed (a) diminished the return on investments and (b) diminished vested pension benefits of Plaintiffs without just compensation, which amounted to a taking without just compensation.

120.    Through the foregoing actions, SRHS has confiscated the property of the members of the Class without just compensation and violated the "takings" clause of the Mississippi Constitution.

**COUNT VII**
**(Breach of Contract)**

121.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

122.    The SRHS Defendants breached the Plan and its contractual terms each time they refused to contribute funds to and/or inadequately funded the Pension Plan according to the terms of the Plan.  Upon information and belief, it is alleged the SRHS Defendants have breached the contract every year since at least 2009.

123.    The SRHS Defendants' breach of contract caused the Plaintiffs' damages as more fully set out herein.

**COUNT VIII**
**(Accounting)**

124.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

125.    The Plaintiffs are entitled to an accounting of all contributions to the Pension Plan and payments from the Pension Plan.

**COUNT IX**
**(Declaratory Judgment)**

126. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

127. The Plaintiffs are entitled to a declaratory judgment under Rule 57 Fed. R. Civ. P. that the Defendants cannot decline to contribute to the Pension Plan and must make contributions so the Plan has sufficient funding in accordance with the terms of the Plan.

128. The Plaintiffs are entitled to a declaratory judgment under Rule 57 Fed. R. Civ. P. that the Defendants' failure to contribute to the Pension Plan in amounts consistent with the Plan's terms constituted a breach of contract.

129. The Plaintiffs are entitled to a declaratory judgment under Rule 57 Fed. R. Civ. P. that the Defendants' decision annually since 2009 to refuse to contribute to and/or inadequately fund the Plan violated the Contract Clause and the Taking Clause and the United States Constitution.

## COUNT X
### (Injunctive Relief)

130. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

131. The Plaintiffs are entitled to a preliminary and permanent injunction that the Defendants cannot decline to contribute to and/or inadequately fund the Pension Plan and must make contributions so the Plan has sufficient funding in accordance with its terms.

## COUNT XI
### (Fraud, Intentional Fraudulent Misrepresentations, and Deceit Against Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr. In Their Individual and Official Capacities)

132.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

133.    The Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, made false representations of material facts with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

134.    More specifically, Defendants' fraud and deceit involved representations to Plaintiffs and the Class that the Plan was adequately funded and that certain defined benefits were payable to each of them.

135.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr. in their individual and official capacities, failed or intentionally refused to disclose material facts with the intent to deceive and defraud the Plaintiffs which caused the Plaintiffs injuries and damages.  The Plaintiffs relied upon the fraudulent misrepresentations of the Defendants and were, in fact, deceived by the fraud of the Defendants.

136.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, misrepresented the financial status of the Plan.

137.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, reassured others of the financial viability of the Plan.

138.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, failed to follow the Plan documents regarding the failure to fund the Plan.

139.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, were responsible for the presentation of false or misleading information to the Plaintiffs in written and verbal communications, including but not limited to the Annual Statements mailed to all participants.

140.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, reviewed and approved annual audit statements containing fraudulent or misleading material.

141.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, approved and published false representations of the financial viability of the plan in order to secure bond funding.

142.    The fraud, deceit and fraudulent misrepresentations of Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their individual and official capacities, caused the Plaintiffs' damages as more fully set out herein and were done so with such malicious intent, intent to defraud, and recklessness as to entitle the Plaintiffs to punitive damages as well.

### COUNT XII
**(Fraud, Intentional Fraudulent Misrepresentations, and Deceit Against Michael J. Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner In Their Individual and Official Capacities)**

31

143.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

144.    The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, failed to reasonably inquire concerning the financial status of the Plan with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

145.    The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, made false representations of material facts with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

146.    More specifically, Defendants' (as defined specifically in this count) fraud and deceit involved representations to Plaintiffs and the Class that the Plan was adequately funded and that certain defined benefits were payable to each of them.

147.    Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, failed or intentionally refused to disclose material facts with the intent to deceive and defraud the Plaintiffs which caused the Plaintiffs injuries and damages.  The Plaintiffs relied upon the fraudulent misrepresentations of the Defendants and were, in fact, deceived by the fraud of the Defendants.

148.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, were aware that the Health System had ceased funding the retirement Plan.

149.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, voted to approve the cessation of mandatory contribution payment by the Health System to the Plan.

150.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, failed to notify any party of the actions taken to the detriment of the Plan participants.

151.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, approved yearly financial audits containing fraudulent or misleading information.

152.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, upon information and belief, approved and published reports containing fraudulent or misleading information in order to secure bond funding.

153.     The fraud, deceit and fraudulent misrepresentations of Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual and official capacities, caused the Plaintiffs' damages

as more fully set out herein and were done so with such malicious intent, intent to defraud, and recklessness as to entitle the Plaintiffs to punitive damages as well.

## COUNT XIII
### (Claim for Equitable Relief Pursuant to ERISA Section 502(a)(3))

154.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

155.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of this title." Pursuant to this provision, and 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Plan is not a "governmental plan" within the meaning of ERISA section 1003(b)(1) and 1002(32), 29 U.S.C. §§ 1002(32) and 1003(b)(1).

156.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action to "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiffs seek orders directing the Plan sponsor and administrator to bring the Plan in to compliance with ERISA, including the reporting, vesting, and funding requirements of Parts 1, 2, and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

## COUNT XIV
### (Claim for Violation of Reporting and Disclosure Provisions)

157.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

158.    At no time did the SRHS Defendants furnish Plaintiff or any member of the Class with a Notice with respect to the Plan pursuant to ERSIA section 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that the SRHS Defendants had failed to make payments required to comply with ERISA section 302, 29 U.S.C. § 1082, with respect to the Plan.

159.    The SRHS Defendants have been the employer that established and/or maintained the Plan.

160.    At least since 2009, the SRHS Defendants have not funded the Plan in accordance with ERISA section 302, 29 U.S.C. § 1082.

161.    As the employer maintaining the Plan, the SRHS Defendants have violated ERISA section 302, 29 U.S.C. § 1082, by failing to fund the Plan, is liable for their own violations of ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by 29 C.F.R. section 2575.502(c)(3)) for each day that the SRHS Defendants have failed to provide Plaintiffs and each Class member with the notice required by ERISA section 101(d)(1), 29 U.S.C. § 1021(d)(1).

**COUNT XV**
**(Claim for Failure to Provide Minimum Funding)**

162.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

163.    ERISA section 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan

benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

164.    As the employer maintaining the Plan, the SRHS Defendants were responsible for making the contributions that should have been made pursuant to ERISA section 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

165.    Since at least 2004, the SRHS Defendants have failed to make contributions in satisfaction of the minimum funding standards of ERISA section 302, 29 U.S.C. § 1082.

166.    By failing to make the required contributions to the Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERSIA section 302, the SRHS Defendants have violated ERISA section 302.  29 U.S.C. § 1082.

## COUNT XVI
### (Claim for Breach of Fiduciary Duty Against All Defendants)

167.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

168.    Plaintiff brings this Count for breach of fiduciary duty pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

**A.**    **Breach of the Duty of Prudence and Loyalty**

169.    ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

    (i)      providing benefits to participants and beneficiaries; and

    (ii)     defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…[and]

(c)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

170.    As fiduciaries with respect to the Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA section 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Plan during the times that each was a fiduciary of the Plan.

171.    Defendants have not enforced any of the provisions of ERISA set forth in Counts XIII – XVI with respect to the Plan.

172.    By failing to enforce the provisions of ERISA set forth in Counts XIII – XVI, Defendants breached the fiduciary duties that they owed to Plaintiff and the Class.

173.    The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and profited Defendant SRHS by providing it the use of money owed to the Plan for its general business purposes.

### B.    Prohibited Transactions

174.    ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

175.    ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest, if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

176.    ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to plan in his or her own interest or for his or her own account.

177.    As fiduciaries with respect to the Plan and, with respect to the SRHS Defendants, as an employer of employees covered by the Plan, and, with respect to Individual Defendants on the Executive Leadership Team and/or Board of Trustees, the Defendants at all relevant times were parties in interest with respect to the Plan pursuant to ERISA section 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

178.    By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants extended credit from the Plan to the SRHS Defendants in violation of ERISA section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known their failure to enforce the funding obligation constituted such an extension credit.

179.   By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants used Plan assets for the SRHS Defendants' own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Plan assets, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

180.   By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants used Plan assets in the SRHS Defendants' interest in violation of ERISA section 406(b)(1)(, 29 U.S.C. § 1106(b)(1).

181.   The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon.

182.   The failure of Defendants to enforce funding obligations owed to the Plan has profited the SRHS Defendants by providing them the use of money owed to the Plan for its general business purposes.

## COUNT XVII
### (Breach of Fiduciary Duty)

183.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

184.   In the event that ERISA does not govern the Plan, Plaintiff pleads alternatively that Defendants Transamerica Retirement Solutions Corporation, KPMG, LLC, the SRHS Defendants, and the Individual Defendants in their individual and official capacities breached their fiduciary duties to the Plaintiff and members of the Class as described below:

A.    Failing to disclose that SRHS reduced and ultimately discontinued its contributions to the Plan and that the Plan was grossly underfunded and would likely fail;

B.    Continuing to recommend Plaintiffs and Class Members pay their contributions even though the SRHS had failed to make its mandatory contributions to the Plan.

C.    Failing to disclose to Plaintiffs and Class Members that they were recommending the continuance of obtaining Plaintiffs' and Class Members' contributions even though SRHS failed to make its mandatory contributions to the Plan.

D.    Failing to correct and/or approve the distribution statements to Plan members that informed them that SRHS had made a contribution to the Plan when they knew or show have known that such communication was incorrect.

E.    Failing to take reasonable steps to enforce claims of the Trust and/or collect assets of the Trust when Defendant SRHS failed to make required contributions; and

F.    Failing to inform Plan members about material facts concerning the status of the Plan.

185.    Additionally, the Individual Defendants breached their fiduciary duties to the Plaintiffs and Members of the Class as described below:

A.    Failing to take adequate steps against Defendant SRHS when it failed to meet its funding obligations;

B.    Failing to assert claims on behalf of the Trust as the funding status of the Trust relative to its accrued liabilities worsened;

C.      Allowing Trustees employed with SRHS to dominate the affairs and administration of the Trust to the detriment of plan participants; and

D.      Delaying any action to correct the Trust's underfunding status.

186.    As a result of the above-referenced breach of fiduciary duties, Defendants named in this count are liable to Plaintiffs and each Class member for all damages recoverable by law.

187.    As a result of the above-referenced breach of fiduciary duties, Plaintiffs and the Class members are entitled to recover costs of their suit and their reasonable attorneys' fees.

## COUNT XVIII
### (Specific Performance)

188.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

189.    In the event that ERISA does not govern the Plan, Plaintiffs plead that specific performance is due to the Plaintiffs and Class Members.

190.    The Plaintiffs and Class Members and Defendants entered into a written contract concerning benefits available as an employee of SRHS.

191.    Plaintiffs and Class Members have complied with all applicable duties imposed by the Defendants in order to receive any retirement benefits.

192.    Defendants have failed to make the mandatory contributions required to adequately pay for the liabilities of Plan.

193.    Defendants now refuse to provide the benefits as defined.

194.     Plaintiffs and Class Members are due the specific performance of the Defendants regarding the retirement benefits.

## COUNT XIX
### (Constructive Trust)

195.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

196.     In the event that ERISA does not govern the Plan, Plaintiffs plead that a constructive trust for funds and monies wrongfully retained, and converted by the Defendants is due to be created.

197.     Defendants wrongfully failed to make the mandatory contributions to the Plan to ensure its financial viability.

198.     Defendants failed to notify the Plaintiffs and Class members that the Plan was receiving none of the mandatory contributions SRHS was required to make.

199.     Defendants continued to assert that the Plan was fiscally sound and able to provide for its members despite knowledge to the contrary.

## COUNT XX
### (Mississippi Uniform Trust Code Violations)
### Against the Retirement Trust Trustees In Their Individual and Official Capacities)

200.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

201.     The Retirement Trust is an express trust created for the benefit of Plaintiffs and all other Class members.

202.     The Retirement Trust is an express trust and is therefore subject to the provisions of the Mississippi Uniform Trust Act, Miss. Code Ann. §91-8-101 *et seq.*

(hereinafter "MUTA"), effective July 1, 2014 and applicable to all existing trusts. Miss. Code Ann. § 91-8-1106.

203.    MUTA establishes a statutory cause of action for a breach of trust. Miss. Code Ann. §§ 91-8-208(c)(13); 91-8-1001(a).

204.    Mississippi common law of trusts and principles of equity supplement the statutory code, except to the extent modified by the Mississippi Uniform Trust Act or another Mississippi statute. Miss. Code Ann. § 91-8-106.

205.    The Retirement Trust Trustees have a duty to administer the Trust such that "all assets are delivered in good faith, in accordance with [the Trust's] terms and purposes and the interests of the beneficiaries," and in accordance with the Mississippi Uniform Trust Act and Mississippi common law. *See* Miss. Code Ann. §§ 91-8-106; 91-8-801.

206.    The Retirement Trust Trustees have a duty to administer the trust "solely in the interests of the beneficiaries," in accordance with the Mississippi statutory and common law. *See* Miss. Code Ann. §§ 91-8-106; 91-8-802.

207.    The Retirement Trust Trustees have a duty to "administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust." The Retirement Trust Trustees must "exercise reasonable care, skill, and caution" in satisfying this standard, in accordance with Mississippi statutory and common law. Miss. Code Ann. §§ 91-8-106; 91-8-804.

208.    The Retirement Trust Trustees have a duty to "take reasonable steps to take control of and protect the trust property." Miss. Code Ann. §§ 91-8-106; 91-8-809.

209.   The Retirement Trust Trustees also have a duty to "take reasonable steps to enforce claims of the trust." Miss. Code Ann. §§ 91-8-106; 91-8-811.

210.   The Retirement Trust Trustees have a duty to "take reasonable steps to compel a former trustee or other person to delivery trust property to the trustee, and to redress a breach of trust known to the trustee to have been committed by a former trustee." Miss. Code Ann. §§ 91-8-106; 91-8-812.

211.   The Retirement Trust Trustees have a duty to "keep the beneficiaries of the trust that are current mandatory or permissible distributes of trust income or principal, or both, reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests," in accordance with Mississippi statutory and common law. Miss. Code Ann. §§ 91-8-106; 91-8-813.

212.   The Retirement Trust Trustees violated the duties listed in paragraphs 210 through 216 by failing to administer the Retirement Trust in good faith and in accordance with its terms and purpose, failing to act in the sole interest of the beneficiaries, acting in ways that harmed the interests of the beneficiaries, and by abandoning their fiduciary obligations, as specified in more detail as follows:

A.   The SRHS Board of Trustees appointed the Retirement Trust Trustees and, between 2009 and the present, also chose not to fund the Retirement Trust in accordance with the Plan's terms. The foregoing circumstances resulted in a conflict of interest for the Retirement Trust Trustees that adversely affected their judgment in violation of Mississippi law.

B.    The Retirement Trust Trustees breached their duties of loyalty to the beneficiaries of the Trust Fund by failing and/or refusing to demand and confirm that required contributions were being made by the SRHS Defendants in accordance with the terms of the Plan.

C.    The Retirement Trust Trustees had knowledge that the Trust Fund was not being funded in accordance with the terms of the Plan, but nevertheless authorized payments from the Retirement Trust to some beneficiaries, which depleted Trust Fund assets contrary to the purposes of the Retirement Trust and to the detriment of other beneficiaries.

D.    The Retirement Trust Trustees failed to take reasonable steps to ensure that the Retirement Trust was adequately funded in accordance with the terms and purposes of the Plan, or to ensure or verify that the SRHS Defendants made the contributions necessary to effectuate the Retirement Trust's purposes.

E.    The Retirement Trust Trustees failed to take reasonable steps to enforce the claims of the Retirement Trust against the SRHS Defendants and the SRHS Board of Trustees for failing and/or refusing to make adequate contributions in accordance with the terms of the Plan.

F.    Despite knowledge that adequate contributions were not being made by SRHS, the Retirement Trust Trustees failed to take reasonable steps to compel the SRHS Defendants to deliver Retirement Trust property

nor did the Retirement Trust Trustees take reasonable steps to redress multiple breaches of trust known to them to have been committed by former Retirement Trust Trustees.

G.    Despite knowledge that beneficiaries were being provided false information concerning the Retirement Trust, the Retirement Trust Trustees failed to inform the beneficiaries that the Retirement Trust was not receiving the required employer contributions in accordance with the Plan's terms and purposes.

213.    Pursuant to the foregoing, the Retirement Trust Trustees committed multiple breaches of trust, which caused the Plaintiffs' damages as more fully set out herein.

<u>**COUNT XXI**</u>
**(42 U.S.C. § 1983 – Due Process Clause Violations**
**Against Individual Defendants In Their Official Capacities Only)**

214.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

215.    The Due Process Clause of the United States Constitution mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

216.    Plaintiffs and each member of the Class has a vested property right to the benefits promised under the Plan and to the adequate and proper operation and funding of the Plan.

217.    Individual Defendants, acting individually and in concert, and under color of state law, violated the procedural and substantive due process rights of the Plaintiffs

and members of the Class by failing make adequate contributions to the Plan in accordance with its terms, by terminating the Plan while it was underfunded, and by failing to provide the benefits promised under the Plan.

218.   Individual Defendants did not provide Plaintiffs or the Class with notice and an opportunity to be heard before taking these actions.

219.   Individual Defendants' actions are arbitrary, capricious, and egregious.

**COUNT XXII**
**(Equitable Estoppel)**

220.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

221.   Defendants falsely represented facts to Plaintiffs and the Class concerning the Plan, including, but not limited to, facts concerning the funding of the Plan and whether the SRHS Defendants were making the required contributions in accordance with its terms.

222.   Plaintiffs and each member of the Class was induced to commence and continue employment with the SRHS Defendants and participate in the Plan in reliance on Defendants' false representations, thus changing their positions based upon them.

223.   Defendants should be estopped from terminating the Plan in its underfunded status and from denying the benefits promised under the Plan.

**COUNT XXIII**
**(Promissory Estoppel)**

224.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

225.    Defendants made promises to Plaintiffs and the Class concerning the Plan, including, but not limited to, promises to fund the Plan, to make the required contributions in accordance with its terms, and to pay benefits as described by the Plan.

226.    Defendants intended that these promises would be relied upon, and Plaintiffs and each member of the Class was induced to commence and continue employment with the SRHS Defendants and participate in the Plan in reliance on Defendants' false promises.

227.    Refusal to enforce Defendants' promises as described above would sanction a fraud or otherwise result in an injustice.

228.    Defendants should be estopped from terminating the Plan in its underfunded status and from denying the benefits promised under the Plan.

## COUNT XXIV
### (42 U.S.C. § 1983 – Conspiracy To Deprive Plaintiffs of Their Civil Rights Between KPMG, LLP, Transamerica, and Individual Defendants In Their Official Capacities Only)

229.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

230.    Individual Defendants, KPMG, LLP, and Transamerica acted jointly and in concert to violate Plaintiffs' civil rights, said violations described in Counts III, IV, and XXI.

231.    Individual Defendants, KPMG, LLP, and Transamerica each took some overt act in furtherance of the conspiracy.  Namely, each participated in the decision not to fund the Plan in accordance with its terms, acquiesced in the actions taken and attempted to cover up the actions taken.

232.  The acts and omissions of Individual Defendants, KPMG, LLP, and Transamerica proximately caused Plaintiffs' damages, as described more fully herein.

233.  The Individual Defendants, KPMG, LLP, and Transamerica knowingly participated in a conspiracy to violate Plaintiffs' civil rights, thus subjecting them to a deprivation of property in violation of the Fourteenth Amendment of the Constitution of the United States.

## COUNT XXV
### (Negligence and Professional Malpractice Against KPMG, LLP)

234.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

235.  KPMG held and continues to hold itself out as a professional accounting firm qualified to perform accounting services, including audits and reviews in accordance with applicable professional standards.

236.  KPMG had a duty to use such skill, prudence, and diligence as accountants of ordinary skill and capacity commonly possess and exercise in the performance of such services for and on behalf of SRHS.

237.  KPMG failed to use such skill, prudence, and diligence in the accounting and auditing services it provided to SRHS.

238.  KPMG repeatedly breached its duties of care and committed professional malpractice in providing its services and advice to SRHS.

239.  As participants in the Plan, Plaintiffs and the Members of the Class were reasonably foreseeable users of the KPMG audits, each of which made representations

regarding the accuracy and reliability of SRHS's financial statements, which in turn included information about the Plan.

240.   Plaintiffs and each member of the Class detrimentally relied on KPMG's advice and expert opinion that SRHS's financial statements conformed with GAAP, GAAS, and GAGAS, insofar as they commenced and continued employment with SRHS and continued making contributions to the Plan.

241.   SRHS's financial statements did not, in fact, conform with GAAP, GAAS, or GAGAS.  At all relevant times, Plaintiffs and the members of the Class did not know that SRHS's financial statements failed to conform with these standards.

242.   Because of these acts and omissions, KPMG breached its duties to the Plaintiffs and the Members of the Class.

243.   As a direct, proximate result of KPMG's negligence and professional malpractice, Plaintiffs and the Members of the Class have suffered damages in an amount to be proven at trial.

## COUNT XXVI
### (Negligence and Professional Malpractice Against Transamerica)

244.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

245.   Transamercia held and continues to hold itself out as a professional financial services firm qualified to perform retirement services, including managing fiduciary obligations, streamlining administrative responsibilities, actuarial services, and maximizing a retirement plan's efficiency, in accordance with applicable professional standards.

246. Transamerica had a duty to use such skill, prudence, and diligence as financial services firms of ordinary skill and capacity commonly possess and exercise in the performance of such retirement services for and on behalf of entities such as SRHS.

247. Transamerica failed to use such skill, prudence, and diligence in the financial and retirement services it provided to SRHS and the Plaintiffs.

248. Transamerica repeatedly breached its duties of care and committed professional malpractice in providing its services and advice to SRHS and the Plaintiffs.

249. As participants in the Plan, Plaintiffs and the Members of the Class were reasonably foreseeable users of reports, benefit statements, and/or other documents generated and distributed by Transamerica, each of which made representations regarding the Plan and contributions made to the Plan.

250. Plaintiffs and each member of the Class detrimentally relied on Transamerica's advice and expert opinion regarding the Plan and contributions made to it, insofar as they commenced and continued employment with SRHS and continued making contributions to the Plan.

251. Contributions to the Plan were not, in fact, being made, as represented by Transamerica. At all relevant times, Plaintiffs and the members of the Class did not know that contributions to the Plan were not being made.

252. Because of these acts and omissions, Transamerica breached its duties to the Plaintiffs and the Members of the Class.

253. As a direct, proximate result of Transamerica's negligence and professional malpractice, Plaintiffs and the Members of the Class have suffered damages in an amount to be proven at trial.

## COUNT XXVII
### (Fraud, Intentional Fraudulent Misrepresentations, and Deceit Against KPMG and Transamerica)

254.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

255.    KPMG and Transamerica made false representations of material facts with the intent to deceive and defraud the Plaintiffs upon which the Plaintiffs reasonably relied to their detriment causing them injuries and damages.

256.    More specifically, KPMG's and Transamerica's fraud and deceit involved representations to Plaintiffs and the Class that the Plan was adequately funded and that certain defined benefits were payable to each of them.

257.    Defendants KPMG and Transamerica failed or intentionally refused to disclose material facts with the intent to deceive and defraud the Plaintiffs which caused the Plaintiffs injuries and damages.    The Plaintiffs relied upon the fraudulent misrepresentations of the KPMG and Transamerica and were, in fact, deceived by their fraud.

258.    Defendants KPMG and Transamerica misrepresented the financial status of the Plan.

259.    Defendants KPMG and Transamerica reassured others of the financial viability of the Plan.

260.    Defendants KPMG and Transamerica failed to follow the Plan documents regarding the failure to fund the Plan.

261.    Defendants KPMG and Transamerica were responsible for the presentation of false or misleading information to the Plaintiffs in written and verbal

communications, including but not limited to the Annual Statements mailed to all participants and/or in the audits of the SRHS financial statements.

262.    Defendant KPMG prepared and approved and Defendant Transamerica reviewed and approved annual audit statements containing fraudulent or misleading material.

263.    The fraud, deceit and fraudulent misrepresentations of KPMG and Transamerica caused the Plaintiffs' damages as more fully set out herein and were done so with such malicious intent, intent to defraud, and recklessness as to entitle the Plaintiffs to punitive damages as well.

### COUNT XXVIII
**(Negligence Against SRHS Defendants and
Individual Defendants in their Official Capacities)**

264.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference

265.    The Plan required SRHS to "make such contributions from time to time, which...shall be necessary as determined by the Actuary to provide the benefits of this Plan."

266.    The SRHS Board of Trustees had the responsibility for determining the amount of contributions to be made by the Health System, subject to the advice and recommendations of an actuary, and SRHS had the responsibility for actually making those contributions.

267.    Beginning in 2009, the SRHS Defendants and the Individual Defendants negligently enacted policies that resulted in inadequate funding of the Plan, which

reduced the present value of the total contractual Plan benefits that were promised to the Class.

268.    The SRHS Defendants' and Individual Defendants' enactment and enforcement of policies that resulted in inadequate funding of the Plan substantially impaired and diminished the contractual rights of the Plaintiffs and members of the Class.

269.    The SRHS Defendants and the Individual Defendants negligently failed to make any pension fund payments for 2010, 2011, 2012, 2013, and 2014 and only made a partial payment in 2009.

270.    As a direct, proximate result of the SRHS Defendants' and the Individual Defendants' negligence, Plaintiffs and the Members of the Class have suffered damages in an amount to be proven at trial.

### COUNT XXIX
**(Wantonness Against SRHS Defendants and Individual Defendants in their Official Capacities)**

271.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference

272.    The Plan required SRHS to "make such contributions from time to time, which...shall be necessary as determined by the Actuary to provide the benefits of this Plan."

273.    The SRHS Board of Trustees had the responsibility for determining the amount of contributions to be made by the Health System, subject to the advice and recommendations of an actuary, and SRHS had the responsibility for actually making those contributions.

274.   Beginning in 2009, the SRHS Defendants and the Individual Defendants wantonly enacted policies that resulted in inadequate funding of the Plan, which reduced the present value of the total contractual Plan benefits that were promised to the Class.

275.   The SRHS Defendants' and Individual Defendants' enactment and enforcement of policies that resulted in inadequate funding of the Plan substantially impaired and diminished the contractual rights of the Plaintiffs and Members of the Class.

276.   The SRHS Defendants and the Individual Defendants wantonly failed to make any pension fund payments for 2010, 2011, 2012, 2013, and 2014 and only made a partial payment in 2009.

277.   As a direct, proximate result of the SRHS Defendants' and the Individual Defendants' wantonness, Plaintiffs and the Members of the Class have suffered damages in an amount to be proven at trial.

### COUNT XXX
**(Negligence and Negligent Misrepresentations Against Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr. In Their Official Capacities)**

278.   Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporates them by reference.

279.   The Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, negligently made false representations of material facts upon which the Plaintiffs and Members of the Class reasonably relied to their detriment causing their injuries and damages.

280.    More specifically, Defendants made negligent representations to Plaintiffs and Members of the Class that the Plan was adequately funded and that certain defined benefits were payable to them.

281.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr. in their official capacities, failed to disclose material facts to the Plaintiff which caused the Plaintiff injuries and damages.    The Plaintiffs and Members of the Class relied upon the misrepresentations of the Defendants and were, in fact, misled by the misrepresentations of the Defendants.

282.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, negligently misrepresented the financial status of the Plan.

283.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, reassured others of the financial viability of the Plan.

284.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, failed to follow the Plan documents regarding the failure to fund the Plan.

285.    Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, were responsible for the presentation of false or misleading information to the Plaintiffs and Members of the Class in written and verbal communications, including but not limited to the Annual Statements mailed to all participants and/or made available online.

286.     Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, negligently reviewed and negligently approved annual audit statements containing false or misleading material.

287.     Defendants Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, approved and published false representations of the financial viability of the plan in order to secure bond funding.

288.     The negligence and negligent misrepresentations of Chris Anderson, Stephanie Barnes Taylor, Michael Crews, and Paul Grayson Carter, Jr., in their official capacities, caused the damages to the Plaintiffs and Members of the Class in an amount to be proven at trial.

## COUNT XXXI

**(Negligence and Negligent Misrepresentations Against Michael J. Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner In Their Official Capacities Only)**

289.     Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporates them by reference.

290.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, failed to reasonably inquire concerning the financial status of the Plan upon which the Plaintiffs and Members of the Class reasonably relied to their detriment, causing them injuries and damages.

291.     The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, negligently made false representations of material facts

upon which the Plaintiffs and Members of the Class reasonably relied to their detriment causing, their injuries and damages.

292.   More specifically, Defendants (as defined specifically in this count) negligently made representations to Plaintiffs and Members of the Class that the Plan was adequately funded and that certain defined benefits were payable to each of them.

293.   Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their individual capacities, failed to disclose material facts to the Plaintiffs and Members of the Class, which caused their injuries and damages.   The Plaintiffs and Members of the Class relied upon the misrepresentations of the Defendants and were, in fact, misled by the negligently made false statements of the Defendants.

294.   The Defendants Michael Heidelberg, Tommy Leonard, Lawrence H. Cosper, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, were aware that the Health System had ceased funding the retirement Plan or should have been so aware.

295.   The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, voted to approve the cessation of mandatory contribution payment by the Health System to the Plan.

296.   The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, failed to notify any party of the actions taken to the detriment of the Plan participants.

297.    The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, negligently approved yearly financial audits containing false or misleading information.

298.    The Defendants Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, upon information and belief, negligently approved and published reports containing false or misleading information in order to secure bond funding.

299.    The misrepresentations of Michael Heidelberg, Tommy Leonard, Morris G. Strickland, Ira Polk, Allen Cronier, and Marva Fairley-Tanner, in their official capacities, caused the damages of the Plaintiffs and Members of the Class in an amount to be proven at trial.

## VI.    PRAYER FOR RELIEF

300.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs and incorporate them by reference.

301.    Because all of the foregoing actions proximately caused injury and damage to Plaintiffs and members of the Class, Plaintiffs pray that judgment be entered against the Defendants on all claims and request that the Court award the following said relief:

A.    Declaring that the Plan is an employee benefit plan within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA section 3(35), 29 U.S.C. § 1002(35), and is not a governmental plan.

B.      Ordering the SRHS Defendants to reform the Plan to bring it in compliance with ERISA and to have the Plan comply with ERISA, including as follows:

(1)     Revising Plan documents to reflect that the Plan is a defined benefit plan regulated by ERISA.

(2)     Requiring the SRHS Defendants to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan, participants, and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2, and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

(3)     Reforming the Plan to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

(4)     Requiring the SRHS Defendants and/or the SRHS Board of Trustees to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports and providing Notice of the Plan's funding status and deficiencies.

C.      Declaring that the Plan is a Trust within the meaning of the Mississippi Uniform Trust Code.

D.      Requiring Defendants, as fiduciaries of the Plan, to make the Plan whole for any losses and disgorge any profits accumulated as a result of fiduciary breaches.

E.      Requiring Defendants, as fiduciaries of the Plan, to make the Plan whole for any losses and disgorge any property or funds misappropriated as a result of fiduciary breaches.

F.      Compelling Defendants to account for the amounts they should have collected and determine the total amount necessary to restore the Retirement Trust to its appropriate value.

G.      Appointing an Independent Fiduciary to hold the Plan's assets in trust, to manage and administer the Plan and its assets, and to enforce the terms of ERISA and the MUTA.

H.      Requiring Defendants to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day they failed to inform Plaintiffs and each Class member of its failure to properly fund the Plan.

I.      Voiding all actions of Defendants which constitute a breach of trust or which constitute actions taken by them in a conflict of interest, including those actions in furtherance of Plan termination, and any action of the Defendants to distribute or liquidate the Retirement Trust's assets, until the Court appoints a substitute fiduciary to review the circumstances and determine the actions in the best interest of the Retirement Trust and its beneficiaries.

J.      Imposing a constructive trust on all cash or property held by the SRHS Defendants in an amount or value sufficient to restore the Retirement Trust to its appropriate value absent the breaches of trust.

K.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA or the MUTA, with respect to the Plan.

L.      Granting some or all remedies available under Miss. Code Ann. § 91-8-1001.

M.       Awarding to Plaintiffs' attorneys' fees and expenses as provided by the common fund doctrine, ERISA section 502(g), 29 U.S.C. § 1132(g) and/or other applicable doctrine.

N.       Awarding to Plaintiffs taxable costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

O.       Awarding to Plaintiffs' attorneys' fees and expenses as provided by 42 U.S.C. § 1988(b).

P.       Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law.

Q.       Awarding, declaring, or otherwise providing Plaintiffs and the Class with all relief under ERISA section 502(a), 29 U.S.C. § 1132(a), the MUTA, or any other applicable law that the Court deems proper.

## VII.    JURY TRIAL DEMAND

Plaintiffs respectfully demand trial by jury.

## VIII.    DOCUMENT PRESERVATION DEMAND

Plaintiffs demand Defendants preserve all documents, electronically stored information, and tangible things that relate to any of Plaintiffs' claims, or any Defendants' defenses pertaining to the allegations raised in this Complaint.

**RESPECTFULLY SUBMITTED**, this the 19th day of January, 2016.

*/s/ James R. Reeves, Jr.*                          */s Lucy E. Tufts*

JAMES R. REEVES, JR. (MS Bar #9519)     STEVEN L. NICHOLAS (*admitted pro hac vice*)
MATTHEW MESTAYER (MS Bar #9646)    GEORGE W. FINKBOHNER (*admitted pro hac vice*)
Reeves & Mestayer, PLLC                       LUCY E. TUFTS (*admitted pro hac vice*)
Post Office Box 1388                           DAVID   G.   WIRTES,   JR.   (MS   Bar
#104414)
Biloxi, Mississippi 39533                      Cunningham Bounds, LLC

Telephone: (228) 374-5151
Facsimile: (228) 374-6630
jrr@rmlawcall.com
mgm@rmlawcall.com

1601 Dauphin Street
Mobile, Alabama 36604
Telephone: (251) 471-6191
Facsimile:  (251) 479-1031
sln@cunninghambounds.com
gwf@cunninghambounds.com
let@cunninghambounds.com
dgw@cunninghambounds.com

ATTORNEYS FOR PLAINTIFFS

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned resident attorney certifies that on this 19th day of January, 2016, a copy of the foregoing pleading has been mailed, filed via the ECF system, and/or otherwise served on all parties and/or their counsel who have appeared in this case.

Documents to additional defendants named in this pleading may be served according to the law.

*/s/ James R. Reeves, Jr.*
JAMES R. REEVES, JR.