IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DISTRICT

| | |
|---|---|
| THOMAS JONES, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SINGING RIVER HEALTH )<br>SERVICES FOUNDATION, )<br>et. al., )<br>)<br>Defendants. ) | CIVIL ACTION NO. 1:14-cv-447-LG-RHW<br>Consolidated with: 1:15-cv-1-LG-RHW<br>1:15-cv-44-LG-RHW |

## PLAINTIFF LOWE's OPPOSITION TO KPMG'S MOTION TO STAY PROCEEDINGS

The Plaintiff Martha Lowe opposes KPMG's motion to stay proceedings pending its appeal from the Court's Order. Ms. Lowe desires to proceed with litigating her claims against KPMG for its alleged misconduct and respectfully request that Court deny the motion. As grounds for her opposition, Ms. Lowe states the following:

## BACKGROUND

As the Court noted in its Order denying KPMG's motion to compel Ms. Lowe to arbitrate her claim against KPMG, Ms. Lowe's complaint avers one claim against KPMG. Ms. Lowe avers that KPMG knowingly participated in or aided and abetted a fiduciary's breach of duty owed to Ms. Lowe and similarly situated

plan participants. This claim relies on the common law of trust and makes no reference to any agreement between KPMG and Singing River Health System (SRHS). Indeed, any person must avoid knowingly participating in and/or aiding and abetting a fiduciary's breach of duty owed to others.

The Court correctly denied KPMG's motion to compel Ms. Lowe to arbitrate her claim against KPMG because there was **no** factual basis for extending the contractual arbitration agreement between KPMG and SRHS to Ms. Lowe. Indeed, Ms. Lowe was not even aware that KPMG and SRHS had entered into an agreement for auditing services, let alone an agreement to arbitrate disputes. And KPMG has never suggested that Ms. Lowe is a party to its agreement with SRHS. Because Ms. Lowe has never been a party to the contract between KPMG and SRHS, she never agreed to arbitrate claims she may have against KPMG for its alleged misconduct.

The U.S. Supreme Court has repeatedly emphasized the contractual nature of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995) (" [A]rbitration is simply a matter of contract *between the parties*; it is a way to resolve those disputes—but only those disputes—that the *parties* have agreed to submit to arbitration" (emphasis added)); *Stolt-Nielsen S. A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 682 (2010)(collecting Supreme cases supporting proposition that arbitration is strictly a matter of contract). In

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 20, (1983) the Court noted that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." The fact that other persons have claims arising from an underlying dispute between parties to an arbitration agreement does not mean that all claims and persons are subject to the arbitration agreement or that they must stand down while the parties to the arbitration agreement complete the arbitration.

**ARGUMENT**

KPMG argues that (1) the Court is required to stay Ms. Lowe's action pending resolution of the arbitration proceeding in *Jones* (2) or alternatively, that the Court should exercise its discretion and enter a stay in Ms. Lowe's case pending the outcome of the *Jones* arbitration and (3) finally, if nothing else, the Court should stay Ms. Lowe's case pending the outcome of its appeal. For reasons articulated below, Ms. Lowe respectfully disagrees with KPMG's arguments and requests that the Court deny KPMG's motion in its entirety.

    **A.    Section 3 of the FAA does not mandate a stay in Ms. Lowe's case pending resolution of the *Jones* arbitration.**

KPMG argues that Section 3 of the FAA mandates a stay in Ms. Lowe's case even though the Court has determined that Ms. Lowe's claim against KPMG

is not referable to arbitration under the SRHS and KPMG agreement. As KPMG must acknowledge the right to a stay under Section 3 centers on whether there is an arbitration agreement between the parties and whether the dispute involves an issue covered by the arbitration agreement. In *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001), the Fifth Circuit observed that "[g]enerally, this section [Section 3] applies only to parties to the arbitration agreement." (brackets added); s*ee Zimmerman v. Int'l Companies & Consulting, Inc.,* 107 F.3d 344, 346 (5th Cir.1997) (finding that "the mandatory stay provision of the FAA does not apply to those who are not contractually bound by the arbitration agreement"); *In the Matter of Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir.1989) (holding that the mandatory stay provision does not apply to nonsignatories to the arbitration agreement).

KPMG relies on a very narrow exception to this general rule governing mandatory stays under Section 3. Citing *Waste Mgmt. Inc. v. Residuos Industriales Multiquim*, 372 F. 3d 339, 343 (5th Cir. 2004), KPMG argues that Section 3's mandatory stay applies in this case because (1) the *Jones* arbitration will involve the same operative facts, (2) the claims in the *Jones* arbitration are "inherently inseparable" from Ms. Lowe's claim and (3) the litigation will have a "critical impact" on the arbitration.

First, the narrow exception identified in *Waste Mgmt. Inc.* does not apply to this case. In *E. Texas Med. Ctr. Reg'l Healthcare Sys. v. Slack*, 916 F. Supp. 2d 719, 722 (E.D. Tex. 2013), the district court observed that the exception invoked in *Waste Mgmt* applied when a **non-signatory defendant** sought to stay litigation that **signatory plaintiff** has initiated against both a signatory defendant and a non-signatory defendant. *Id*. ("As in *Waste Mgmt., Hill,* and *Harvey,* the stay provision under § 3 typically applies to non-signatory *defendants* where the *signatory plaintiff* was compelled to arbitrate claims inherently inseparable from the claims litigated against the non-signatory defendants. *Suzlon Infrastructure, Ltd. v. Pulk,* 2010 WL 3540951, 2010 U.S. Dist. LEXIS 94413 (S.D.Tex. Sept. 10, 2010) (summarizing cases)."[1] In the case at bar, Ms. Lowe is not a signatory to the agreement nor has she agreed to arbitrate any of her claims against one or more of the defendants. Unlike the *Waste Mgmt.* case, Ms. Lowe (the non-signatory) is not seeking a stay of her case pending the resolution of the *Jones* arbitration. Instead, this is a case where a signatory defendant is seeking to stay litigation brought by a

---

[1] In *Waste Mgmt.* the Court set forth the application of these factors in the following way: "We thus turn to the issue of WM's claims against RIMSA, a non-signatory, are "referable to arbitration" under the agreement with whether Onyx. Synthesizing this Court's precedent, several factors emerge for invoking § 3 on the **application of a non-signatory**: 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and 3) the litigation must have a "critical impact" on the arbitration. *See, e.g., Hill,* 282 F.3d at 347; *Harvey,* 199 F.3d at 795-96." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.,* 372 F.3d 339, 343 (5th Cir. 2004)(emphasis added)

non-signatory plaintiff. KPMG does not cite a case where a court has granted a mandatory stay to a signatory defendant against a non-signatory plaintiff.[2]

Even assuming that the *Waste Mgmt.* exception applies to a non-signatory plaintiff, the factors identified do not favor granting a mandatory stay under Section 3. Other than making a conclusory assertion, KPMG does not demonstrate how the claims in *Jones* and *Lowe* are "inherently inseparable." Relying on the common factual basis is insufficient because doing so collapses the first factor into the second. Instead, KPMG fails to show that the elements in the claims asserted in *Jones* are "inherently inseparable" from the common law trust claim Ms. Lowe asserts against KPMG. Ms. Lowe's claim does not depend on showing that KPMG was a fiduciary, that it engaged in a Section 1983 conspiracy, that it acted negligently or committed malpractice, or that it committed fraud. Ms. Lowe need only establish that KPMG knowingly participated in a breach of duty by plan fiduciaries and/or that it aided and abetted such a breach.

It is wholly inadequate for KMPG to simply argue that Ms. Lowe's claim depends on a duty it owed to her. The source of the duty imposed on KPMG not to participate in or aid and abet a fiduciary breach stems from the common of law of trust and that body of law defines the scope of the duty. Thus, the duty she

---

[2] In *Broussard v, First Tower Loan, LLC*, 2015 WL 8478573 (E.D. La. 2015), the district court granted a discretionary stay of the EEOC's claims in intervention against the defendant and not a mandatory stay.

6

asserts KPMG violated is distinct from the duties the *Jones* plaintiffs allege KPMG ignored.

With respect to the "critical impact" factor, KPMG argues that the *Lowe* litigation will have a critical impact on the *Jones* arbitration because it risks inconsistent results on identical facts and overlapping issues regarding the same or similar class of plaintiffs. First, the arbitration decision will not apply to Ms. Lowe's claim against KPMG because (1) the claims are not the same and (2) Ms. Lowe is not a party to the arbitration. Thus, it is unclear how there is a risk of "inconsistent" results. Moreover, to Ms. Lowe's knowledge, KPMG has not conceded that the *Jones* plaintiffs can pursue a class claim in arbitration or that she would not be allowed to "opt-out" of any class certified by the arbitrator.

Second, unlike the case in *Harvey v. Joyce* 199 F. 3d 790, 796 (5th Cir. 2000), Ms. Lowe's litigation against KPMG would not necessarily render the *Jones* arbitration "meaningless and redundant."[3] Assuming the Jones plaintiffs pursue their claims in arbitration, KPMG can establish in that arbitration that it did not commit fraud or breach a fiduciary duty etc. Presumably, such claims (if

---

[3] KPMG incorrectly characterizes the stay order in *Harvey v. Joyce* as an order staying "non-signatory's claims." In *Harvey*, the Plaintiffs (shareholders in a corporation) were signatories to an arbitration agreement that included the defendant Joyce as a party. The co-defendant corporation (CTC) however was a non-signatory. Because the Plaintiffs sought to hold the non-signatory liable for the conduct of Joyce (a signatory defendant), the Court held that the non-signatory defendant could invoke the stay provision of Section 3. *Id*. at 795-796 ("Because CTC's potential liability derives from Joyce's conduct, the claims asserted against CTC are based on the same operative facts and are inherently inseparable from the claims against Joyce.")

7

litigated on class wide basis) would foreclose further litigation. Thus, KPMG could benefit from the arbitration (if done on a class wide basis) even while Ms. Lowe pursues her claim against KPMG.

**B.     The Court should not exercise its discretion to enter a stay order.**

KPMG argues that the Court should exercise its discretion and order Ms. Lowe's case stayed while it arbitrates a different set of claims with the *Jones* plaintiffs. KPMG relies on the same arguments it advances with respect to the mandatory stay under Section 3 of the FAA. KPMG points to "overlap" between the *Lowe* and *Jones* cases and essentially argues that in light of this overlap, Ms. Lowe must indefinitely wait her turn. To the extent there is overlap in discovery, there is no reason Ms. Lowe cannot coordinate discovery with the *Jones* plaintiffs as they pursue their claims in arbitration. As the Eleventh Circuit noted in *Klay v. All Defendants,* 389 F.3d 1191, 1203-04 (11th Cir.2004), "courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation."

Finally, the "two bites at the apple" theory assumes that the claims asserted in the *Jones* arbitration are the same as the claim asserted by Ms. Lowe. In its Order denying KPMG's motion to compel Ms. Lowe to arbitrate her claim, the Court effectively recognized that her claim was different and distinct from the claims asserted in the *Jones* complaint. The mere fact that arbitration and litigation

will occur on parallel tracks does not support the "two bites at the apple" theory. Indeed, in *Moses H. Cone,* the Supreme Court noted that although arbitration could result in the hospital being forced to resolve its dispute against the architect in a different forum than its dispute against the contractor,

> "That misfortune ... is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."

460 U.S. at 20.

KPMG sought to aggressively invoke arbitration against non-signatories to its arbitration agreement with SHRS and the fact that such effort failed as to Ms. Lowe does not mean that KPMG can now effectively achieve the same result through a stay of her claim. As the Fifth Circuit noted in *Saucier v. Aviva Life & Annuity Co.,* 701 F.3d 458, 463-64 (5th Cir. 2012):[4]

> [T]he federal policy of enforcing arbitration agreements is the same regardless of whether the party seeking enforcement proceeds through an action to compel under 9 U.S.C. § 4 or a motion to stay under 9 U.S.C. § 3. In both cases, one party seeks to force another party to resolve a dispute through arbitration rather than through the courts. Furthermore, in both cases piecemeal litigation may result—if some parties to a dispute have agreed to arbitrate and others have not, enforcing the arbitration agreement will prevent the entire dispute from being resolved in a single forum. Regardless of the procedural

---

[4] *Saucier* involved abstention under *Colorado River* and the question was whether the district court correctly abstained.

mechanism, the fact that enforcing an arbitration agreement may lead to piecemeal litigation does not weigh in favor of abstention.

In this case, KPMG requested that the Court enforce its arbitration agreement with SHRS against non-signatory plaintiffs and not having succeeded with respect to all plaintiffs now complains about the unfairness of piecemeal and overlapping litigation. Such an outcome was a foreseeable consequence of its aggressive application of its arbitration agreement and, accordingly, the Court should reject "overlapping" facts as a reason for granting a stay.

**C.     The Court should deny KPMG's request to stay the litigation pending the outcome of its appeal.**

KPMG's last request is for a stay pending the outcome of its appeal. The Court should deny this request because (1) KPMG has not made a strong showing that it will prevail on the merits; (2) KPMG does not establish that it will suffer irreparable injury absent a stay; (3) the stay puts Ms. Lowe at a disadvantage and (4) the stay does not promote judicial economy.

First, not only has KPMG failed to make the requisite "strong showing," it is not likely to prevail on the merits. KPMG asserts that Ms. Lowe seeks to enforce the terms of the engagement letters; however, saying so doesn't make it so. Ms. Lowe's claim against KPMG rests on the common law of trust and does not depend on the engagement letter. Moreover, as the Court correctly observed in its Order denying KPMG's motion to compel Ms. Lowe to arbitrate her claim, KPMG

10

has yet to cite "any binding authority that supports its argument that such a tenuous relationship is a sufficient basis for invoking the extraordinary remedy of equitable estoppel." (Doc. 161, p. 10) Other than pointing to the engagement letters, KPMG points to no other evidence that Ms. Lowe was **even** aware of such engagement letters. If she doesn't know about the engagement letters then *a fortiori* she can't rely on any benefits or rights arising from such letters.

Second, KPMG argues that it will suffer irreparable harm if it is forced to proceed in the litigation and the arbitration at the same time while also pursuing its appeal. KPMG cites no authority for the proposition that having to defend both non-arbitrable and arbitrable claims in different forums constitutes irreparable injury. In fact, as noted above, this outcome is entirely foreseeable and a result of the case law involving arbitration agreements which stresses that arbitration is a matter of consent and contract. It is difficult to imagine that the Supreme Court would tolerate the piecemeal litigation that flows as a natural consequence of the contractual nature of arbitration, if such an outcome would cause "irreparable injury."

Third, KPMG incorrectly asserts that the only potential injury to Ms. Lowe is a delay in vindication of her rights while the appeal is pending. If the *Jones* plaintiffs pursue their claims in arbitration, then entry of the stay effectively puts

Ms. Lowe at a disadvantage and effectively acts as a back door way of forcing her to wait on the arbitration proceeding.

Finally, a stay does not promote judicial economy because if the *Jones* plaintiffs pursue their claims in arbitration and the Fifth Circuit affirms the Court's order denying KPMG's motion to compel arbitration, then Ms. Lowe and KPMG may have to duplicate some of the discovery conducted in the arbitration. Such an outcome clearly lacks judicial economy. However, if the Fifth Circuit reverses and compels Ms. Lowe to arbitrate, the discovery conducted in the litigation would likely be useful in the arbitration.

## **CONCLUSION**

For all the reasons articulated above, Ms. Lowe respectfully requests that the Court deny KPMG's motion to stay in its entirety.

Respectfully submitted,

/s/ Richard P. Rouco
Richard P. Rouco

OF COUNSEL:
QUINN, CONNOR, WEAVER
 DAVIES & ROUCO LLP
2 – 20th Street North, Suite 930
Birmingham, AL 35203
(205) 870-9989
rrouco@qcwdr.com

Roger K. Doolittle
ROGER K. DOOLITTLE, ATTORNEY
460 Briarwood Drive, Suite 500
Jackson, Mississippi 39206
rogerkdoolittle@aol.com

Joe R. Whatley
WHATLEY KALLAS, LLP
2001 Park Place North, Ste. 1000
P.O. Box 10968 (35202)
Birmingham, Alabama 35203
jwhatley @whatleykallas.com

Angelique M. Cooper
A. COOPER, ATTORNEY AT LAW, LLC
4308 Midmost Drive
Mobile, Alabama 36609
acooper@amclaw.net

*Counsel for Lowe Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2016, I filed a true and correct copy of the foregoing using the Court's CM/ECF system, which will automatically notify and serve all counsel of record.

/s/ *Richard P. Rouco*
Richard P. Rouco