## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**THOMAS JONES, et al., on behalf of**
**themselves and others similarly situated**                                **PLAINTIFFS**

**v.**                                                          **CAUSE NO. 1:14CV447-LG-RHW**
**CONSOLIDATED WITH 1:15CV1-LG-RHW**
**CONSOLIDATED WITH 1:15CV44-LG-RHW**

**SINGING RIVER HEALTH SYSTEM, et al.**                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
### MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE FEE

**BEFORE THE COURT** is the Motion [164] for Award of Attorneys' Fees

and Reimbursement of Costs and Award of Incentive Fee filed by the plaintiffs in

these consolidated class action lawsuits.  They seek an award of $6,450,000 in

attorneys' fees and $125,000 in costs for the attorneys' efforts in negotiating a

settlement in the class action cases.  The plaintiffs also ask the Court to award

$12,500 in incentive fees, to be divided among the named class representatives in

the class action cases and in some of the Jackson County Chancery Court cases.

Approximately 204 members of the settlement class have objected to the attorneys'

fees in a joint response [177].

After reviewing the submissions of the parties, the record in this matter, and

the applicable law, the Court finds that the Motion seeking an award of attorneys'

fees, costs, and an incentive fee should be granted to the extent that $4,805,772.30

in attorneys' fees are awarded, $125,000 in expenses are awarded, and an incentive

fee of $12,500 is awarded.  This opinion constitutes the Court's findings of fact and

conclusions of law pursuant to Fed. R. Civ. P. 23(h)(3) and Fed. R. Civ. P. 52(a).

## BACKGROUND

These consolidated class action lawsuits arose out of the alleged underfunding of the Singing River Health System Employees' Retirement Plan and Trust ("the Plan").   This Court has approved a settlement pursuant to which SRHS will pay $149,950,000 to the Plan over a period of approximately thirty-five years. The settlement agreement also provides:

> [SRHS has] agreed to pay attorneys' fees and expenses, provided that any such award does not exceed $6,450,000 in fees and $125,000 in documented expenses, which may include expenses incurred in connection with administering the settlement.  Plaintiffs' Counsel will not apply for a larger award of attorney fees unless Defendants oppose the request for the sum set forth in Exhibit C [to the Stipulation].

(Pls.' Mem., Ex. 1 at 14, ECF No. 163-1).  Exhibit C to the settlement agreement provides that the attorneys' fees shall be paid in four installments, subject to approval by this Court: (1) a $2,000,000 payment upon approval of the settlement; (2) a $1,200,000 payment on September 30, 2016; (3) a $1,750,000 payment on September 30, 2017; and (4) a $1,500,000 payment on September 30, 2018.  (Pls.' Mem., Ex. C to Ex. 1, ECF No. 163-1).  Additionally, as an incentive award, Singing River has also agreed to pay $12,500, to be divided among the named plaintiffs to the *Jones*, *Cobb*, and *Lowe* federal lawsuits as well as the *Broun* and *Lay* state court lawsuits.  (Pls.' Mem., Ex. 1 at 8, ECF No. 163-1).

Twenty-four attorneys who participated in the class settlement have provided

their billing records to the Court.[1]  These attorneys have reported 7785.63 hours

through April 1, 2016.[2]  In addition, 722.55 hours have been reported by the

paralegals who assisted these attorneys for that same time period.  The Court

recognizes that additional time was expended by at least some of these attorneys

after April 1, 2016, because a two-day fairness hearing was held on May 16-17,

2016.  The attorneys also incurred $138,225.49 in out-of-pocket expenses while

prosecuting these lawsuits.  (Pls.' Mem., Ex. 2 at 10, ECF No. 165-2).

Allen Carroll, a certified public accountant designated by the plaintiffs as an

expert witness, has testified by affidavit that the present value of the future

payments to the Plan is $55,950,876, and the present value of the attorneys' fees

sought is $5,944,745.  (Pls.' Mem., Ex. 3 at 4, ECF No. 165-3).  Thus, the attorneys'

fees constitute 9.6 percent of the total class recovery.[3]  (*Id.*)

Mr. Hugh D. Keating of the Gulfport, Mississippi law firm Dukes, Dukes,

---

[1]The contemporaneous time sheets and records were provided to the Court post fairness hearing for in camera review.

[2] Class counsel Jim Reeves had testified by affidavit that 7813 hours had been reported by a total of twenty-three attorneys who represent the plaintiffs. (Pls.' Mem., Ex. 2 at 9, ECF No. 165-2).  However, it appears that work performed by a file clerk working at a rate of $85.00 per hour for attorney Dustin Thomas was inadvertently counted as attorney time.  The Court has disregarded this clerical work from its consideration.  In addition, it appears that one of the attorneys was not counted when Mr. Reeves' affidavit was prepared.

[3] As explained in this Court's Memorandum Opinion and Order Granting Motion for Final Approval of Class Action Settlement [283], the parties have agreed that any attorneys' fees and expenses awarded will be paid in addition to the funds paid to the Plan.

Keating & Faneca, P.A., has provided the following testimony via affidavit:

> For complex, high stakes or high risk litigation in South Mississippi, I
> believe that customary and reasonable rates currently charged by
> litigation partners in Mississippi firms and/or regional firms with
> offices in Mississippi range from $500.00 - $550.00 per hour.

(Pls.' Mem., Ex. 4 at 3, ECF No. 165-4).

The plaintiffs have also prvided an affidavit that was produced in another

lawsuit pending before this Court by Mr. John G. Corlew of the firm Corlew,

Munford & Smith PLLC, in Jackson Mississippi.  (Pls.' Mem., Ex. 5 at 1, ECF No.

165-5).  Mr. Corlew testified that a customary and reasonable hourly rate for

attorneys practicing in complex Mississippi litigation would be $400 to $500.  (*Id.*)

## DISCUSSION

## I.  PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

"In a certified class action, the court may award reasonable attorney's fees

and nontaxable costs that are authorized by law or by the parties' agreement."  Fed.

R. Civ. P. 23(h).

> While the so-called "American Rule" prohibits the award of attorneys'
> fees in the absence of a specific statutory or contractual provision, it is
> well settled that the "common benefit" or "common fund" equitable
> doctrine allows for the assessment of attorneys' fees against a common
> fund created by the attorneys' efforts.

*Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).  In common fund cases,

courts in the Fifth Circuit are permitted to use either the percentage method or the

lodestar method to calculate attorneys' fees.  *Union Asset Mgmt. v. Dell, Inc.*, 669

F.3d 632, 644 (5th Cir. 2012).

"A variant on the traditional common-fund case occurs frequently in mass tort litigation – in both class actions and large consolidations – where a separate fund to pay attorney fees is created as a part of the settlement." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012). The percentage method can also be utilized for these "constructive common funds." *Id.* (citing *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)).

> Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.

*Id.* (citing *Johnston*, 83 F.3d at 245-46). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Id.* (quoting Manual for Complex Litig. (4th) § 21.7 (2004)).

Courts that decide to utilize the percentage method often perform a lodestar cross-check "to avoid windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Id.* at 1086; *see also Klein v. O'Neal, Inc.*, 704 F. Supp. 2d 632, 675 (N.D. Tex. 2010). This

lodestar cross-check helps confirm that the attorneys' fees calculated pursuant to the percentage method are reasonable. *In re Heartland*, 851 F. Supp. 2d at 1086.

The settlement in the present case is a constructive common fund, because the attorneys are not asking to be paid from the fund awarded to the Plan. This Court will first analyze the proposed fees using the percentage method. The Court will then perform a lodestar cross-check to determine whether the proposed award is reasonable.

### A. PERCENTAGE METHOD

Pursuant to the percentage method, the court awards a reasonable percentage of the common fund to the attorneys. *Dell, Inc.*, 669 F.3d at 642-43. The court first determines the actual monetary value conferred to the class by the settlement. *In re Heartland*, 851 F. Supp. 2d at 1075. Next, the court applies a benchmark percentage to this value. *Id.* Finally, the court applies the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine whether the percentage should be adjusted upward or downward. *Id.* Fees of twenty to thirty percent of the common fund are usually awarded in class action cases. *Gooch v. Life Invs. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012); Manual, § 14.121.

The present value of the future payments to the Plan is $55,950,876. (Pls.' Mem., Ex. 3 at 4, ECF No. 165-3). The present value of the attorneys' fees sought is $5,944,745. (*Id.*) Since there is a constructive common fund in the present case,

these two figures should be added to determine the value of the settlement to the

class – $61,895,621.  The attorneys' fees sought constitute approximately 9.6% of

the value conferred on the class.  *See in re Heartland*, 851 F. Supp. 2d at 1072

(quoting Manual, § 21.7 ).  Thus, this request is well below the amount typically

awarded in class action cases.[4]  Nevertheless, the Court will perform a lodestar

cross-check, which includes application of the *Johnson* factors to determine whether

the requested award is reasonable.

### B.  LODESTAR CROSS-CHECK

Under the lodestar method, the court first multiplies the reasonable number

of hours spent working on the case by the reasonable hourly rate for the attorney to

determine the lodestar figure.  *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir.

2013).  "[T]he relevant market for purposes of determining the prevailing rate to be

paid in a fee award is the community in which the district court sits."  *Tollett v. City*

*of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  "Generally, the reasonable hourly

rate for a particular community is established through affidavits of other attorneys

practicing there."  *Id.*

The plaintiffs have produced affidavits from local attorneys who have

testified that the market rate in this district for complex litigation ranges from $400

to $550.  This Court has previously held that a $400 hourly rate is proper in this

---

[4] Even if the amount of attorneys' fees available pursuant to the settlement
were not considered a value conferred on the class, the percentage requested would
be 10.6 %.  Thus, the fees requested in the present case would still fall far below the
typical award in this type of case.

jurisdiction for an experienced attorney handling complex litigation. *See U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06cv433-HSO-RHW, 2014 WL 691500, at \*14 (S.D. Miss. Feb. 21, 2014). There is no reason to deviate from that approved rate or grant a higher rate in the present case.

The plaintiffs have not provided any expert testimony concerning a reasonable rate for paralegals. However, this Court has previously determined that $124 per hour is a reasonable rate for paralegals. *Id.* at \*18.

The twenty-four attorneys who have requested attorneys' fees in this case have reported collectively 7785.63 hours, and their paralegals have recorded 722.55 hours. At a rate of $400 per hour, the lodestar is $3,114,252 for the attorneys. The lodestar for paralegals is $89,596.20. Therefore, the total lodestar is $3,203,848.20. The amount of fees requested by the attorneys – $6,450,000 – is therefore 2.01 times the amount of the lodestar.

"There is a strong presumption of the reasonableness of the lodestar amount." *Black*, 732 F.3d at 502. However, the court must consider the *Johnson* factors to determine whether the lodestar figure should be adjusted upward or downward. *Strong v. Bellsouth Telecomm., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

undesirability of the case; (11) the nature and the length of the
professional relationship with the client; and (12) awards in similar
cases.

*Johnson*, 488 F.2d at 717-19. The most important factor is the degree of the success

obtained. *Black*, 732 F.3d at 503. The Court "must be careful, however, not to

double count a *Johnson* factor already considered in calculating the lodestar when it

determines the necessary adjustments." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320

(5th Cir. 1993).

As for the first factor, over 150 lawsuits concerning the alleged underfunding

of the Plan have been filed in three different courts and plaintiffs' counsel's

investigation of the case involved the review of thousands of pages of financial

records. The twenty-four plaintiffs' attorneys have demonstrated that they spent

7785.63 hours prosecuting this litigation and negotiating the settlement. A total of

722.55 hours of paralegal time has also been reported by the law firms that

represent the plaintiffs.

The second factor requires consideration of the novelty and difficulty of the

questions involved. The plaintiffs have asserted that the following novel and

difficult questions have been presented by this lawsuit: (1) the issue of whether the

Plan is governed by ERISA; (2) the implications of Mississippi's Uniform Trust

Code, Miss. Code Ann. § 91-8-10, et seq., which recently went into effect in 2014; (3)

the effect of the Mississippi Tort Claims Act; (4) the potential liability of Jackson

County, Mississippi; (5) the method of calculating the amount of funds that should

have been deposited in the Plan; and (6) "the nature of the complex relationship

between the federal court and parallel state court proceedings." (*See* Pls.' Mem. at 22-23, ECF No. 165).

The third factor is the level of skill necessary to represent the plaintiffs effectively in this lawsuit. As explained previously, this litigation was complex and time-consuming. Furthermore, the comprehensive settlement agreement[5] entered into in this case indicates that these attorneys are skilled in negotiation.

The fourth factor to consider is whether the plaintiffs' attorneys were precluded from accepting other cases due to their involvement in the present case. Class counsel Jim Reeves has testified by affidavit that he and the other attorneys who represented the class have "devoted a substantial percentage of their time to this litigation" as well as a "substantial commitment of resources." (Pls.' Mem., Ex. 2 at 9, ECF No. 165-2). This is further evidenced by a review of the submitted billing records, which indicate that a large percentage of class counsel's time was spent working on this litigation. However, some of the attorneys seeking a fee award have not spent a substantial amount of time litigating this case.

The fifth factor is the customary fee in the community for cases of this nature. The Court has adequately addressed this factor while calculating the lodestar. The sixth factor takes into account the fact that the plaintiffs agreed to a contingency fee of forty percent. (*Id.* at 10).

---

[5] The terms of the settlement agreement are detailed in this Court's Memorandum Opinion and Order Granting Motion for Final Approval of Class Action Settlement [283], which is incorporated herein by reference.

The seventh factor is the time limitations imposed by the client or the circumstances. There were no such time limitations in the present case. The eighth factor is the amount involved and the results obtained. As more fully explained in this Court's Memorandum Opinion and Order Granting Motion for Final Approval of Class Action Settlement [283], the class settlement provides a 100 percent recovery on behalf of the Plan for the time period at issue. The settlement also provides for Chancery Court oversight of future administration of the Plan.

The Court is unable to adequately consider the ninth factor – the experience, reputation, and ability of the attorneys – for all of the twenty-four attorneys from the information provided. However, the Court has previously considered the experience, reputation, and ability of class counsel in its Memorandum Opinion and Order Granting Motion for Final Approval of Class Action Settlement [283].

The tenth factor is the undesirability of the case. The Court finds that this case was undesirable. It was a very high-profile case that definitely had an emotional impact on the class members. The case has also been complex, and, at the outset of the litigation, the ability to obtain a recovery was questionable because SRHS's debts currently exceed its assets.

The plaintiffs have not requested an enhancement of the lodestar on the basis of the eleventh factor – the nature and the length of the professional relationship with the client. Therefore, it is not necessary to consider this factor.

The twelfth factor is awards in similar cases. As explained previously, fees of twenty to thirty percent of the common fund are usually awarded in class action

cases. *Gooch v. Life Invs. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012); Manual, § 14.121. The percentage requested here is much lower.

After applying the *Johnson* factors to the lodestar, the Court finds that a multiplier of 1.5 should be applied to the lodestar, resulting in an award of $4,805,772.30. This upward adjustment is warranted, because this was complex, high profile litigation. Furthermore, as explained previously, the Court is aware that the attorneys expended additional time that was not reflected in the records provided to the Court.

### C. COMPARISON OF PERCENTAGE AND LODESTAR METHODS

Based on the lodestar cross-check, the Court finds that usage of the percentage method would result in an unreasonable fee award. The award derived from the lodestar method with a 1.5 multiplier results in a reasonable award of attorneys' fees in the amount of $4,805,772.30.

The Court recognizes that the attorneys have requested a higher multiplier that would result in an award of $6,450,000. However, the Court finds that no additional adjustments should be made for several reasons. First, there is a strong presumption that the lodestar figure is correct. *Black*, 732 F.3d at 502. Second, the lodestar calculated in this matter was very generous, because the attorneys were permitted an across-the-board hourly rate of $400 and paralegals were awarded an across-the-board rate of $124 per hour, even though the plaintiffs did not submit resumes for each of these attorneys and paralegals to enable the Court to examine their individual levels of experience. Third, the Court did not require the attorneys

-12-

to demonstrate that they had exercised billing judgment by writing off unproductive, excessive, or redundant hours. *See id.*; *see also Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002). Finally, the settlement negotiated by the attorneys provides that they will receive all of their fees and expenses by September 30, 2018, while the Plan most likely may not recover all payments due under the settlement until September 30, 2051.

## II. PLAINTIFFS' MOTION FOR COSTS

The Court has reviewed the attorneys' expenses, which actually exceed the amount they request in their Motion. The expenses are reasonable considering the nature of this litigation, and no justification has been submitted to the Court for reducing the expenses requested. As a result, the Court finds that the attorneys are entitled to an award of $125,000 for expenses incurred in this litigation.

## III. PLAINTIFFS' MOTION FOR AN INCENTIVE AWARD

"Courts commonly permit payments to class representatives above those received in settlement by class members generally. Such payments, however, must be reasonable in light of applicable circumstances, and not unfair to other class members." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003). The Court finds that the incentive award of $12,500, which is to be divided among the named plaintiffs in the *Jones*, *Cobb*, and *Lowe* federal lawsuits as well as the *Broun* and *Lay* state court lawsuits, is reasonable, based on these plaintiffs' time and effort expended in prosecuting these lawsuits on behalf of the class. The high profile nature of this litigation provides further justification for this award. In

addition, this award will not impact the other members of the class.  Therefore, the plaintiffs' Motion for an Incentive Award is granted.

## CONCLUSION

Neither the percentage nor the loadstar method of computing the amount of attorneys' fees in this case demonstrates a windfall for the many lawyers who have participated in this matter.  However in the judgment of the Court, the loadstar calculations more accurately reflect the appropriate amount of  compensation for the actual work performed.

The Court commends all of the attorneys for the hard work, professionalism, and dedication that they demonstrated throughout this lawsuit.  In particular, the significant contributions of class counsel are acknowledged.  Attorneys' fees in the amount of $4,805,772.30, and expenses in the amount of $125,000 are awarded.  In addition, the incentive award of $12,500, which is to be divided among the named plaintiffs in the *Jones*, *Cobb*, and *Lowe* federal lawsuits as well as the *Broun* and *Lay* state court lawsuits, is approved.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [164] for Award of Attorneys' Fees and Reimbursement of Costs and Award of Incentive Fee filed by the plaintiffs in these consolidated class action lawsuits is **GRANTED**. Attorneys' fees in the amount of $4,805,772.30 are awarded, and expenses in the amount of $125,000 are awarded.  In addition, the incentive award of $12,500, which is to be divided among the named plaintiffs in the *Jones*, *Cobb*, and *Lowe* federal lawsuits as well as the *Broun* and *Lay* state court lawsuits, is approved by

the Court.

**SO ORDERED AND ADJUDGED** this the 10th day of June, 2016.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE